Matthew M. Levy, J.
Having previously attained the civil service eligibility list for the position of correction matron, the petitioner was, on February 12,1959, appointed to such position at the Westfield State Farm in Bedford Hills, N. Y.. for a probationary period of 12 weeks. On March 21, after having served about 5 weeks, the petitioner received her first rating, in which she was reported as ‘ ‘ fair ’ ’, with the quality of her *236 work ‘ ‘ generally acceptable ”, a ££ willing worker ”, “ receptive to new ideas and methods ’ taking an ‘ ‘ unusual interest ’ ’ in her work, receiving ££ constructive criticism well”, and usually finding £ ‘ ways and means of dealing with emergencies. ’ ’ On April 17, a little less than 4 weeks thereafter, she received a second rating, which characterized her work as ££ unsatisfactory ”.[1] On April 30 the petitioner was informed that on May 7, 1959, the date of the expiration of her probationary period, her services would be terminated — and they were. The petitioner now seeks an order, in a proceeding brought pursuant to article 78 of the Civil Practice Act, to direct the respondent Commissioner of the Department of Correction of the State of New York to rescind the termination and to direct reinstatement with back pay.
The position of correction matron is in the classified civil service. Section 9 of the New York Civil Service Law provided that: 1 ‘ All appointments or employments in the classified service shall be probationary and the civil service commission having jurisdiction shall, by rule, provide for the conditions and extent of probationary service.” (This is now covered by Civil Service Law, § 63.)2 Pursuant to the statute, rule XII of the Rules for the Classified Civil Service was promulgated, providing that: £ £ Every original appointment * * * shall be for a probationary term of three months * * * [I]f the conduct, capacity or fitness of the probationer be not satisfactory his service shall be discontinued at the end of such term.” (Probationary appointments are now provided for in the Rules for the Classified Service, rule 24.)[2]
The law is well settled that a probationary appointee may be dismissed at the end of the probation period without a hearing (Matter of Voll v. Helbing, 256 App. Div. 44, appeal dismissed 294 N. Y. 653.) However, the determination to discontinue must not be arbitrary and capricious, and, if the probationer, by petition or proof, raises a substantial issue of fact *237 as to whether the determination was made in good faith, he is entitled to a trial by jury on this issue. (Matter of Silverman v. Taylor, 270 App. Div. 1040, motion for leave to appeal dismissed 296 N. Y. 827; cf. Matter of Winkle v. Adams, 4 Misc 2d 441.) The petitioner concedes that the Commissioner has power to terminate the employment of a classified civil servant appointed for a probationary term, but contends that, since the act of termination must be based on a finding, reached in good faith, that the services of the probationer were unsatisfactory, the termination in the case at bar was arbitrary and capricious and not in good faith.
The issue, then, is whether the petitioner has presented sufficient evidence to bring into question the respondent’s good faith in determining that the employment should be discontinued. In support of the petition, it is argued that the inconsistency between the reports in so short a time is so great as to raise serious questions as to the good faith of the second evaluation. In some circumstances, that contention may be sound, but not in the light of the present record. In my view, the fact that the probationer was rated satisfactory on her first performance rating report and then unsatisfactory on the second report, about four weeks later, is not an inconceivable or astounding circumstance. True, the reports are not at all similar; but, certainly, the character of an employee’s work and his attitude towards it are not necessarily static — and it may be that, having obtained a good report at first, the petitioner felt herself safe to proceed thereafter as she wished, even to the extent of risking a deteriorated rating.
The record before me shows that the assistant superintendent as well as the supervisory matrons, the officers under whom the petitioner served as correction matron, reported to the respondent Commissioner in writing tha,t the petitioner’s services were ‘ ‘ unsatisfactory ’ ’. The second performance report contained the following specific data:
(1) As a new officer, the petitioner’s work is about average;
(2) she reported very late for assignment on April 12, 1959;
(3) on April 25,1959 she failed to lock in those not permitted to attend the movies before turning the cottage over to her relief;
(4) while at first very willing to work overtime, even on short notice, of late she resents changing of schedule;
(5) she lacks understanding of the over-all meaning of the job and is inclined to form her own opinions too rashly without qualification;
*238 (6) she often antagonizes those with whom she is in contact and tries to rnn things her own way;
(7) she accepted constructive criticism in the beginning, but now resents older officers’ advice;
(8) she is more inclined to “boss” her subordinates than to “ lead ” them, when she should be more considerate of others;
(9) she is overzealous in attempting to maintain order and obedience when she should be more tactful;
(10 she does not appear to be qualified for advancement and needs more understanding and training.
The petitioner contends that, in the light of her over-all performance, the complaints listed above were without merit and constitute arbitrary and capricious reasons for the termination of her employment. In his appraisal of questions of this nature, the Commissioner necessarily has wide latitude as to what should be the determinants and also as to what weight should be given to the various factors. Clearly, then, the mere fact that the probationer feels that certain delicts were given too much weight, or that certain actions of hers were misunderstood, does not raise a triable issue as to the good faith of the Commissioner. The petitioner’s belief that the complaints against her were without merit does not tend to prove that the respondent did not act in good faith. And the mere assertion that the respondent did not so act is insufficient to entitle the petitioner to trial by jury, if, as here, the assertion is unsupported by the evidence. In order to disturb the determination of the Commissioner, there must be some tangible fact or some substantial circumstance that points to the conclusion that the termination of the probationer’s appointment was a capricious act done in bad faith or for ulterior motive (see Kaplan, Law of Civil Service, pp. 181-186).
The evaluation of the petitioner’s services was based entirely upon her performance record while at Westfield Farm. The second report and rating expressed the consensus of opinion of four supervisory staff members. No claim has been made that these superiors of the petitioner were venting a personal grievance against her or wore acting in bad faith. She does not deny, but attempts only to justify or explain, her lateness on April 12 and her failure, on April 25, to lock the cottage upon leaving the premises. Under the circumstances disclosed, it appears that the determination and recommendation of the petitioner’s immediate superiors were not arbitrary and capricious, and I can see no legal basis for disturbing the result (Matter of Dornfest v. Hilliard, 200 Misc. 649). Indeed, it is *239 a well-established principle that even if, in any given case, the court may be of the opinion that a petitioner should not have lost his position, that is of no consequence, unless the dismissal be arbitrary, capricious, in bad faith or unlawful. The court may not substitute its view for that of the Commissioner, who has been delegated by law to pass upon the questions presented, nor is it the function of the court to interfere with the Commissioner’s determination, made in the proper exercise of his discretion (People ex rel. Schau v. McWilliams, 185 N. Y. 92).
The cases cited by petitioner are clearly distinguishable. In Matter of Polsenski v. Montgomery (71 N. Y. S. 2d 386, appeal dismissed 87 N. Y. S. 2d 438) conflicting claims were raised which required a trial. No such situation obtains here. (It may be noted that the trial of that case resulted in a finding that the City Manager did not act in bad faith in view of the evidence that he acted upon reports by the Public Safety Commissioners. Matter of Polsenski v. Montgomery, N. Y. L. J., Jan. 9, 1948, p. 114, col. 1 [Close, Off. Ref.].) In the case of Matter of Edell v. Municipal Broadcasting System (9 Misc 2d 220) there was evidence that a personal difference between petitioner and respondent’s director had arisen because it was claimed that the director had wrongfully blamed petitioner for a program error of another employee, which incident may have left the director with a hostile feeling toward petitioner. No such factual situation has been presented here. In the case of Matter of Maynard v. Monaghan (284 App. Div. 280) petitioner was dropped from the police force before the end of his probationary period, not because Ms superiors found his work unsatisfactory, but because he at one time signed a nominating petition for a Communist candidate for public office. In Matter of Silverman v. Taylor (270 App. Div. 1040, supra) issues of fact were raised which required a hearing as to whether the services were unsatisfactory. That is not this case.
The present record, in my opinion, does not in any way demonstrate that the termination of the petitioner’s employment at the end of her probationary period was made in bad faith or was arbitrary, capricious or unreasonable. Accordingly, the application is denied in all respects and the petition is dismissed.

. The detailed bases for the second rating are set forth hereinafter in this opinion.

. The parties have not noted that the petitioner received her probationary appointment prior to April 1, 1959' (the date that the revised statute became effective) and that her services were terminated after this date. Insofar as the present case is concerned, the applicable statute is substantially the same in effect and consequently it is not necessary to determine which law governs in the instant situation. The new rules became effective September 8, 1959, after the termination of the petitioner’s services, and prior to the submission of this application. The rules, while quite different in language, are also similar in intent in respect of the issues in the ease at bar, and, therefore, I do not now pass upon which set of rules is applicable.