Matthew M. Levy, J.
On August 16,1955, the petitioner was appointed a correction officer in the Department of Correction of the City of New York. On January 27, 1958, written charges and specifications of violations of the rules and regulations of the department were served on the petitioner as follows: (1) that the petitioner had accepted and removed from the Penitentiary at Bikers Island, without official authorization, a letter written by an inmate confined at the institution, addressed to the inmate’s wife; (2) that the petitioner was absent without official leave on December 28, 1957; and (3) that the petitioner failed to submit the prescribed written report in connection with his lateness in reporting for duty on December 28, 1957.
On April 16, 1958, the petitioner was dismissed by the Commissioner of Correction, who made a determination, after due hearing, that the petitioner was guilty of each of the charges and specifications. The petitioner commenced a proceeding for judicial review of his removal, and, on May 28, 1959, the Appellate Division of this court, in the exercise of its original jurisdiction in such matters (Civ. Prac. Act, § 1296), held that1 ‘ there was no substantial evidence on the whole record to establish the charge contained in the first specification ”, and that ‘ ‘ the other two charges were sustained ”. In its opinion the court also stated that “ [unquestionably the determination dismissing petitioner from the department was actuated in a great measure by the adverse finding as to the first charge (Matter of Phinn v. Kross, 8 A D 2d 132, 140.) The order of the court *891 provided “ that the determination of the respondent be and the same hereby is annulled and the matter remanded to the Commissioner of Correction to reconsider the punishment in the light of the opinion of this court.” On August 17, 1959, the respondent made a ‘ ‘ Redetermination of Punishment ’ in which she stated “ that after consideration of all the factors involved, I adhere to my original determination of dismissal and again order respondent, Brie Phinn, dismissed from the Department of Correction Nunc Pro Tunc as of April 16,1958.”
This is a proceeding, invoking article 78 of the Civil Practice Act, whereby the petitioner asks the court to review the respondent’s redetermination as to the punishment imposed, and to remand the proceeding to the respondent with directions to impose a lesser punishment. The Commissioner, in response to the petition, has stated that she considered the gravamen of the charges and the disciplinary record of the petitioner, as well as the petitioner’s period of service in the department and, after consideration of all the factors involved, she dismissed the petitioner from his job as correction officer nunc pro tunc as of April 16, 1958, the date of the original determination. Several issues were argued by the parties when this matter first came before me, and, at my request prior to decision, reargument was had and further briefs were submitted when I posed what seemed to me to be a number of additional issues relevant to a proper disposition of the proceeding.
In 1955, subdivision 5-a was added to section 1296 of the Civil Practice Act to overcome decisional law disallowing judicial review of administrative determination as to the punishment imposed upon a civil service employee (Matter of Barsky v. Board of Regents, 305 N. Y. 89). That subdivision provided for an additional issue to be passed upon by the courts — that is, as to “Whether the respondent abused his discretion in imposing the measure of punishment or penalty or discipline involved in the determination. ’ ’
The petitioner claims such “ abuse of discretion” on four , bases: (1) that the punishment of dismissal was intrinsically too severe for the two offenses of which he was found .guilty; (2) that dismissal was too drastic, even taking into account his prior violations of departmental regulations; (3) that he was not afforded a hearing on the issue of punishment as distinct from guilt, and that his prior disciplinary record was not offered in evidence so as to give him an opportunity to respond thereto; and (4) that the penalty of dismissal was impermissible in view of the earlier reversal and decision of the Appellate Division.
*892 It will be recalled that the charges of which the petitioner has been presently found guilty are (a) that he absented himself from his duties on one day without official permission, and (b) that he failed, notwithstanding the requirements of the rules of the department, to submit a written report as to his tardiness in reporting for duty on that day. I would agree with the petitioner that for such two offenses — were they isolated — dismissal is a rather harsh penalty, and that, without more, such disciplinary action would seem to be an abuse of discretion.
But it appears that since his appointment on August 16, 1955 — a period of less than three years prior to the effective date of his dismissal and inclusive of his probationary status — the petitioner has been brought up on charges 6 times, consisting of 17 specifications (exclusive of the present charges). These violations, in the main, involved repeated absences without official authority on a number of days, tardiness without excuse, failure to notify his superiors thereof, neglect in submission of reports thereon, failure to file physician’s certificates as to alleged illnesses, and similar offenses. The petitioner was found guilty and fined each time — the punishment being gradually stepped up — at first 2 days’ pay, then 3, then 8 and finally 10 days’ pay. And there was one other specification of which the petitioner was found guilty as far back as January 15, 1957 — that the petitioner “ [f] ailed to rectify his attendance comportment ’ ’.
While each of the specifications, past and present, if taken individually, might be considered trivial, or not of such a serious nature as to warrant the drastic punishment of dismissal, it seems to me that their number shows a persistent and continuing pattern of neglectful conduct, irresponsible behavior or insubordinate attitude, or all, in flagrant violation and disregard of the Buies of the Department of Correction, a division of municipal administration that is directly concerned with security and where high standards of employee service must be maintained. Frequent unexcused absence and tardiness, coupled with repeated failure to notify his superiors of anticipated non-or- late appearance at the petitioner’s institution of assignment, may result in the disruption of the good order, efficiency and security of the institution of which the Commissioner has official charge. 'If the Commissioner were to treat lightly such continual acts on the petitioner’s part, and permit the petitioner to ignore the precise interim warning which he was given, it might tend to create a false impression that others could do likewise without fear of substantial punishment, and thus adversely affect the morale of the whole department. And, since I am of *893 the view that' it is the function and responsibility of the Commissioner to run the department, and not the court’s (Matter of Croft v. McGinnis, 24 Misc 2d 235), I would not interfere with her determination here unless it was arrived at by proceedings that were contrary to law or there was an abuse of discretion in the measure of the punishment imposed.
In my view, taking the record as a whole, the punishment here is not so shocking to the court’s sense of fairness that it constitutes an abuse of discretion. In the case at bar,- the petitioner’s employment covered less than three years. That alone would differentiate the present situation from that of the petitioner in Matter of Nimelman v. Kross (5 A D 2d 984) where the court held that “ [dismissal with consequent loss of pay privileges and pension rights in the case of a physician with a record of 23 years of good and faithful service is much too severe ”. The petitioner relies upon the statement in the opinion of the Appellate Division in the instant case (hereinbefore referred to) — that “ [unquestionably the [respondent’s] determination dismissing petitioner from the department was actuated in a great measure by the adverse finding as to the first charge.” (Matter of Phinn v. Kross, supra, p. 140) —and contends that the respondent did not give due consideration thereto when she made her redetermination. If the Appellate Division thought that the respondent’s determination of dismissal was shocking to its sense of fairness here, it could have so stated, as it did in Matter of Nimelman v. Kross (5 A D 2d 984, supra) where the court annulled the dismissal and remitted the proceedings to the Commissioner for the imposition of disciplinary measures consistent with the court’s holding that the penalty imposed upon Nimelman was ‘ ‘ much too severe ’ ’. In the instant case, on the other hand, the opinion did not contain any indication that the Appellate Division was of the view that the punishment was excessive. It is not to be implied from the order of remand that the Appellate Division was of the opinion that the punishment imposed was inappropriate in respect of the two charges upon which the petitioner was properly found guilty. Here, as in Matter of Sullivan v. Moynihan (285 App. Div. 965, appeal dismissed 2 N Y 2d 883) the court, in effect, said only that “ [i]n view of the gravity of some of the charges which we find were not sustained * * # we are unable to determine whether the commissioner would have imposed the same punishment on a finding that appellant had violated only the rules above referred to ” (p. 966). (See, also, People ex rel. Gilson v. Gibbons, 231 N. Y. 171, 174; Matter of Grottano v. Kennedy, 5 N Y 2d 381; 6 N Y 2d 812.)
*894 The Commissioner was not compelled to impose a lesser punishment upon the petitioner because of the finding by the Appellate Division that there was no substantial evidence to establish the first charge. On this record, the function of the Commissioner upon remand was to redetermine the punishment on the basis of the finding that the two remaining charges against the petitioner were sustained. The court did not undertake to suggest, much less decide, what that punishment should be.*
Next, the petitioner argues that the respondent had no power to dismiss him on August 17, 1959, nunc pro tunc as of April 16, 1958, the date of the original determination of dismissal. The petitioner cites Matter of Yannantuono v. Silverstein (8 A D 2d 725) in support of his contention. That case, however, is quite different from the present one, for there the original determination and the redetermination were made on different charges, while here the redetermination was made on the same set of charges as the initial determination, albeit one of the set had been eliminated. Matter of Grottano v. Kennedy (5 N Y 2d 381, supra) is more to the point. In that case, the Court of Appeals dismissed one charge as a matter of law and remanded the proceeding to the Police Commissioner to reconsider the measure of punishment based on the remaining charges. Upon redetermination, the Commissioner adhered to his original decision and dismissed the petitioner nunc pro tunc as of the date thereof. The petitioner’s subsequent article 78 proceeding was dismissed (Matter of Grottano v. Kennedy, N. Y. L. J., Aug. 3, 1959, p. 4, Backer, J.).
The issue, as a matter of substance, is whether the petitioner in the case at bar is entitled to compensation as a correction officer for the period from that date, April 16, 1958, to the date of the Commissioner’s redetermination reiterating the dismissal, August 17, 1959. In Van Valkenburgh v. Mayor (49 App. Div. 208) the court held that there is no right to back pay in the absence of an order of reinstatment. There is no question, in the case at bar, that the Appellate Division had remanded the matter for redetermination of punishment without directing the reinstatement of the petitioner, and that he had not rendered any services from the date of his first dismissal.
*895 Under subdivision 3 of section 75 of the Civil Service Law and subdivision 3 of section 884-1.0 of the Administrative Code of the City of New York, an employee may be suspended for not more than one month without pay pending the hearing and determination of charges against him, and, if the employee so suspended be removed, he shall not be entitled to salary or compensation after suspension. Consequently, these provisions oi the statute and the code would be of some significance if the Commissioner had reduced the penalty. Absent that modification of the punishment, they have no relevance at this point. As indicated in Matter of Lindquist v. City of Jamestown (192 Misc. 906) the petitioner was not under suspension during the intervening period of several months, but was out of office by virtue of an order dismissing him after hearing. It is true that the Appellate Division annulled that order but (it should be recalled) the Appellate Division remitted the matter for redetermination without directing the reinstatement of the petitioner in the meantime. Under that order, • the petitioner was not entitled to any back salary unless the dismissal was eliminated as a penalty. But (it will, of course, also be recalled) there was no change in the punishment — and, since the Commissioner was adhering to her original determination, there Avas no necessity for any change in the effective date of the dismissal. In short, I hold, as to this issue, that in the circumstances of this case the redetermination may laAvfully be made effective as of the date of the original determination.
The final question before me is whether the redetermination of dismissal Avas arrived at first in the exercise of due process, next as required by statute, and then as directed by the Appellate Division. The second decision of dismissal resulted not from a new hearing, but from a revieAV of the record. In the light of the Appellate Division decision that the respondent “reconsider the punishment”, did the petitioner have a legal right to a further hearing before the respondent on the issue of the appropriate penalty to be imposed upon him, and was the respondent empowered to mete out punishment on the basis of the petitioner’s prior disciplinary record in the department Avithout requiring that the record be offered in evidence at such further hearing so that the petitioner might be given an opportunity to answer or explain it?
The authorities seem to be clear that, after a finding of guilt, and solely for the purpose of assessing the measure of punishment, the Commissioner did not violate the precept of due process, or any mandate of statute or any judicial directive in *896 considering the petitioner’s prior disciplinary record without conducting a hearing.
In the case at bar, the Appellate Division did not direct a new hearing; it remanded the matter to the Commissioner to reconsider the penalty to be imposed by her in the light of the-dismissal of one of the three charges of which the petitioner had been found guilty by the Commissioner, and upon all of which the penalty of dismissal was presumably based.
The petitioner cites a passing- comment by the Court of Appeals in the case of Matter of Loewy v. Binghamton Housing Auth. (4 N Y 2d 1036), made upon a procedural motion having to do with leave to appeal, in support of the contention that, as a matter of law, the petitioner had a right to a new hearing on the issue of punishment. But I do not gather from what the Court of Appeals said or held in the Loewy case that there is a constitutional or statutory right to a hearing on the sole issue of the penalty to be determined subsequent to a finding of guilt after a hearing has been duly held as to the guilt or innocence of the employee (see Matter of Epstein v. Board of Regents, 295 N. Y. 154). And the petitioner has not cited (nor have I been able to find) any constitutional or statutory provision requiring a hearing on such an issue.
On each of the many charges and specifications of which the petitioner had theretofore been found guilty, he had received due notice and had been accorded a due hearing. He had full opportunity then (and so far as I can tell from this record, exercised it) to answer such charges or to seek to explain them away. And he is not, as a matter of law, entitled to a second hearing on this disciplinary record when it is not received in evidence to aid in the substantive establishment of his guilt on the charges presently involved. On these charges, he did have a full hearing, and the Appellate Division sustained the finding of his guilt on the facts.
As to aEeged lack of due process, what Mr. Justice Black said for the Supreme Court of the United States in the far more serious matter of a criminal prosecution is apposite here, a case involving an administrative disciplinary proceeding only:
“ The case presents a serious and difficult question. The question relates to the rules of evidence appEcable to the manner in which a judge may obtain information to guide him in the imposition of sentence upon an already convicted defendant. Within Emits fixed by statutes, New York judges are given a broad discretion to decide the type and extent of punishment for convicted defendants. Here, for example, the judge’s *897 discretion was to sentence to life imprisonment or death. To aid a judge in exercising this discretion intelligently the New York procedural policy encourages him to consider information about the convicted person’s past life, health, habits, conduct, and mental and moral propensities. The sentencing judge may consider such information even though obtained outside the courtroom from persons whom a defendant has not been permitted to confront or cross-examine. It is the consideration of information obtained by a sentencing judge in this manner that is the basis for appellant’s broad constitutional challenge to the New York statutory policy.
# * *
“We cannot say that the due process clause renders a sentence void merely because a judge gets additional out-of-court information to assist him in the exercise of this awesome power of imposing the death sentence. • * * * We hold that appellant was not denied due process of law.” (Williams v. New York, 337 U. S. 241, 244-245, 252.)
In People ex rel. Simermyer v. Roosevelt, denying reargument of 1 Appellate Division 434, the court, in 2 Appellate Division 498, 499, affirmed 151 N. Y. 675, said: “ Where, however, the commissioners have determined the question as to the guilt or innocence of the relator under the charges preferred, they then have to determine what punishment should follow; and in determining that question they have a right to consider the relator’s record or any other fact that is within their personal knowledge. This principle was established in the case of People ex rel. McAleer v. French (119 N. Y. 505). The respondents, therefore, had the right to have before them the record of the relator; and while they had not the right to consider that record in determining whether or not the relator was guilty, it was properly before them for the purpose of considering the punishment.” (See, also, Matter of Barsky v. Board of Regents, 305 N. Y. 89, supra.)
The cases relied upon by the petitioner are not in point. In People ex rel. Miller v. Wurster (91 Hun 233 [which, by the way, was reversed in 149 N. Y. 549]) and People ex rel. Roe v. MacLean (57 Hun 141) the prior disciplinary records were considered on the substantive issue of guilt or innocence, not on the measure of the punishment after a finding of guilt, as in the case at bar (see 1 Wigmore, Evidence [3d ed.], § 4). In Matter of Loewy v. Binghamton Housing Auth. (5 A D 2d 916, 917, supra) the court said that “the agency’s consideration of the issue of punishment will not, under our order remitting for *898 further proceedings [4 A D 2d 581], necessarily require the reception of evidence (as did the remission in the Longchamps case [296 N. Y. 239] ) or the conduct of a hearing ”.
The motion is denied and the petition is dismissed. An order has been signed and entered accordingly.

 Until the decision in Matter of Mitthauer v. Patterson (8 N Y 2d 37 [May 19, 1960]) there appears to have been “ no other reported case where the reviewing court itself fixed a lesser penalty although there are many where courts have sent such matters back to administrative boards to fix new penalties ” (p. 42).