Matthew M. Levy, J.
This is a proceeding instituted by a patrolman, invoking article 78 of the Civil Practice Act, to review the action of the Police Commissioner of the City of New York, who had dismissed the petitioner after a hearing upon charges of misconduct. Much of what was initially raised in the papers was removed from the court’s consideration by a stipulation duly entered into by the petitioner and his attorney. That stipulation provided ‘£ that all allegations raised in the petition regarding insufficiency of the evidence that was presented at the disciplinary hearing of Allen E. Ross [the petitioner] is [are?] hereby withdrawn and that the allegations contending that the Petitioner did not have counsel of his own choice, nor that the punishment was fair and reasonable are the main * issues of this proceeding.”
The instant charges resulting in dismissal concern disregard of duty and infraction of rules occurring on July 24, 1961, and, more particularly, with respect to the patrolman’s tour of duty from 3:00 p.m. to 11:00 p.m. On that day, the petitioner was absent from his post without permission or proper police necessity from 6:35 p.m. to 7:00 p.m., and again from 8:00 p.m. to 11:00 p.m. He also failed to make required entries in his memorandum book concerning that tour of duty. And, further, he was seen at 11:00 p.m. not wearing the prescribed uniform. At the hearing, the petitioner pleaded guilty to these charges and to the specifications in respect of them.
It appears that the petitioner had sustained an accidental injury on February 28, 1960, and it is the alleged failure of the *49 Police Commissioner to consider the medical record with respect thereto that the patrolman in his petition urges as the arbitrary action warranting relief, the petitioner contending that the record should have been secured and considered. This contention is quite wide of the mark. Not only does it affirmatively appear that the respondent made the record available to himself prior to determination, but there is nothing in this record to indicate that the claimed results of that accident (falling down some steps, causing a cerebral concussion) had anything to do with the petitioner’s conduct upon which the instant charges against him were based. He was on full duty the day before and on full duty the day after the critical date. Moreover, the explanation of his guilty plea at the hearing failed to relate to the existence of any condition on the day in question referable to the injury of some 17 months prior thereto. The explanation given by the patrolman referred rather to the fact that the petitioner had had severe stomach pains which he attributed to a tuna fish salad he had eaten earlier that day.
Concerning this, it is to be noted that it appears in the minutes of the hearing that the petitioner had taken a taxicab to return to his home at about 6:15 to 6:30 p.m., that day, and it was his contention that, despite his alleged attempts to do so, he was not able to reach the station house by telephone, although he admitted that he could have stopped there while returning by cab to his home. The precinct officials endeavored to reach him at his home at 10 o’clock that evening but were unable to do so, and, thereafter, in response to the message, the petitioner did call the police precinct. In my view, it cannot be regarded as an abuse of discretion that the respondent considered that the alleged stomach pains did not prevent the petitioner from reporting to his station house after the time he left his post and before he did telephone there after receiving a call from it at his home at 10:00 p.m., and, after coming to the precinct station that evening, from failing to make the necessary entries concerning his tour, and, further, from not being in full uniform at 11:00 p.m. As prescribed it is to be noted that this petitioner went on duty at 3:00 p.m., and only three hours thereafter left his post, and that it was not indicated when he ate the salad, if at all.
It is further contended by the petitioner that the punishment of dismissal constituted an abuse of discretion by the Police Commissioner, as it was not fair and reasonable and, under the circumstances, was far too severe. On the other hand, the respondent contends that, in view of the petitioner’s prior record of repeated violations, the punishment of dismissal was not inappropriate and did not constitute an abuse of discretion.
*50 If it could be considered as a reasonable conclusion to be reached from the testimony adduced that the violations with which the petitioner was charged were necessarily the result of stomach pain, then it could be that the respondent should have considered these infractions as an isolated matter and not in the light of the past record, and that therefore the punishment was too severe. But it seems to me, on the basis of this submission, that the violations cannot be explained as necessarily resulting from the stomach pains (if they existed) and that the respondent had the right in the sound exercise of discretion to consider the past record, and that it cannot be said that the respondent did not have sound ground to direct dismissal of the petitioner.
The point is well taken that dismissal for the offenses charged in the instant proceeding, if isolated, might be deemed rather harsh. But, as held in Matter of Phinn v. Kross (26 Misc 2d 889, affd. 15 A D 2d 641), the previous record of the petitioner may be taken into account in the court’s determination as to whether the punishment was too severe. True, this policeman — who has been a member of the force for 13 years — has, in some respects, a good record. He has made some 200 arrests, including those involving 25 felonies. He has also been cited for meritorious police duty. The cases of Matter of Nagin v. Zurmuhlen (6 A D 2d 677) and Matter of Mitthauer v. Patterson (8 N Y 2d 37) indicate that a long, good, faithful civil service record is a factor which ought to be considered in proceedings such as this. I think I should mention too the previous service record of the petitioner in World War II as a factor which must be considered in determining whether the punishment was excessive, for in Matter of Zebley v. Lubin (7 A D 2d 965) the court — in holding dismissal an abuse of discretion under the circumstances there existing — observes that the petitioner “is a veteran of World War II with an excellent service record ”, and in Matter of Loewy v. Binghamton Housing Auth. (4 A D 2d 581, 588, appeal dismissed 4 N Y 2d 1036) the court noted that the petitioner is a veteran of World Wars I and II.
On the other hand, the petitioner’s record is not altogether plus by any means. On the debit side of the ledger, I find the following in this record: he has previously been found guilty of 9 charges with 19 specifications over an 8-year period, and he was given a 1-year probationary sentence about 14 months before the incidents giving rise to his dismissal. This repeated history of misconduct sharply differentiates the present case from that of Matter of Nimelman v. Kross (5 A D 2d 984) where *51 dismissal for trivial offenses, after 23 years of unblemished service, was held improper.
Subdivision 5-a of section 1296 of the Civil Practice Act limits the court’s function on this issue in a proceeding such as this to “ [w]hether the respondent abused his discretion in imposing the measure of punishment or penalty or discipline involved in the determination”. It is not for the court to substitute its judgment as to the appropriate measure of discipline for that of the Commissioner (Halpern, J., in Matter of Stolz v. Board of Regents of Univ. of State of N. Y., 4 A D 2d 361, 364). What I said on this point in Matter of Phinn v. Kross (26 Misc 2d 889, 892-893, affd. 15 A D 2d 641, supra) is apposite here s “ And, since I am of the view that it is the function and responsibility of the Commissioner to run the department, and not the court’s (Matter of Croft v. McGinnis, 24 Misc 2d 235), I would not interfere with [his] determination here unless it was arrived at by proceedings that were contrary to law or there was an abuse of discretion in the measure of the punishment imposed
Hence, looking at the nature of the offenses and their repetitions, and the petitioner’s previous record of service — good and bad — and all other relevant factors, I cannot find that “ the measure of punishment or discipline imposed is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one’s sense of fairness ” (Matter of Stolz v. Board of Regents of Univ. of State of N. Y., 4 A D 2d 361, 364, supra).
In the petitioner’s reply to the answer filed to the petition seeking to set aside the respondent’s determination of dismissal, it is urged that, since the Trial Commissioner made a naked finding that the petitioner was guilty, and left it entirely to the respondent to fix the penalty, there is no warrant in law for the punishment imposed by the respondent. The petitioner did not submit a brief on this motion, and therefore I have not been favored with any citation of precedent, statute, code, rule, regulation or analogy to support his contention. Nor have I been able to find any on the basis of personal research. As an original matter, I hold that the fact that the record is barren of any recommendation of punishment does not render the respondent’s determination as to punishment void.
The function of the Trial Commisioner is to examine, hear and investigate the charges — to hear the evidence on notice to the accused. (Administrative Code of City of New York, § 434a-14.0.) He is not required as a matter of law or regulation (see Rules and Procedures of Police Department, ch. 21) *52 to come to a conclusion as to the guilt or innocence of the accused — although, doubtless, in a proper case, he may do so and may make a recommendation to the Police Commissioner as to punishment. A trial jury in a criminal case proceeds in similar fashion, and there is no reason why — where, as here, the full record is before the Police Commissioner — the hearing officer should be compelled to proceed in any other manner (cf. Matter of Kelly v. Monaghan, 9 A D 2d 92).
The moving party contends further that, at the hearing, he was not represented by counsel of his own choosing and that his counsel failed to present evidence that was material and relevant to his defense. The point is an interesting one — raising an issue in an administrative proceeding analogous to that involved in writs of coram nobis where the matter is one of criminal prosecution (Matter of Bojinoff v. People, 299 N. Y. 145; People v. Lain, 309 N. Y. 291).
I would have no hesitancy in holding that a member of the police force of the City of New York who is charged with the commission of offenses to be heard before a departmental trial tribunal is entitled, as matter of right, to be represented by counsel of his choice, and that were the petitioner deprived of that right, the disciplinary proceeding against him would have been nullified because of lack of due process. Indeed, the sanctity of that right is expressly recognized in the Rules and Procedures of the Police Department. Section 26.0 of chapter 21 specifically provides that the accused “ shall be given the right to be represented by counsel”, and section 23.0 states that the defense counsel furnished any accused by the department without cost to him “ is a lawyer, a member of the force and assigned to the Police Commissioner’s office [and] is available to defend the respondent. A respondent may consult him in person or by telephone. A respondent may elect to retain an attorney of his own choice or to defend himself.”
I find, from an examination of this record, that the present petitioner has fully availed himself of the rights thus accorded him. It is clear that the lawyer assigned by the Police Department, and who defended petitioner at the hearing, was not foisted on the petitioner. In fact, he was chosen by the petitioner, who was represented by the same counsel in a number of the prior departmental disciplinary proceedings instituted against the petitioner.
It appears that, at the time the instant charges were served upon the petitioner, he was also served with a written notification by the department through his desk officer “ to contact Department defense counsel immediately upon receipt of charges *53 to discuss the plea, regardless of hoto respondent intends to plead, or be represented ” (first emphasis in original; second emphasis supplied), and that the address, room number, telephone listing and hours of availability of the ‘1 Department Defense Counsel Office ” were also furnished him. There is no basis, from this notice, or from any other fact set forth in the record, to infer that the petitioner was intimidated by the department into selecting its defense office and this specific member thereof to represent the petitioner in this matter. And, in my view, it is entirely irrelevant to the issue of whether or not the petitioner was represented by counsel of his own choosing, that, as argued by the petitioner, he interpreted the rules of the department to mean that he could select only a member of the Police Department to represent him. Neither the rule nor the notification so requires or reasonably justifies such an inference. The rule clearly says: “ A respondent may elect to retain an attorney of his own choice or to defend himself.” That does not mean that the right is limited to “ an attorney in the department.” The Police Department Defense Counsel Office is in the nature of a departmental public defender system or legal aid facility. And the notification makes quite clear to the accused patrolman that the choice of professional representation is entirely his.
Because of the prerogative recognized by the rules, plus the fact that the petitioner has availed himself thereof, there is no doubt in my mind that he had a fair hearing insofar as his right to representation by counsel is concerned. Hence, the only question left is whether or not the attorney’s performance of his responsibilities on the trial was so ineffectual as to warrant me in holding that the petitioner, in reality, was. denied his right to trial with counsel (cf. People v. Tomaselli, 7 N Y 2d 350). I find, from the record before me, no merit in fact to this contention, and, while (as, I said earlier) I have received no memorandum of law to aid me, independent study has afforded me no ground for a holding that there is any legal merit to the petitioner’s argument.
The departmentally assigned counsel had represented 2,500 other policemen on charges. There is no claim that he was incompetent or faithless in these matters or this one. The complaint of the petitioner is that his counsel failed to introduce into evidence before the Trial Commissioner proof of the brain concussion sustained by the petitioner some time before the present occurrence, and that this prejudiced his defense. I fail to see by what process of reason or logic this contention can be sustained. What can I appropriately infer from the head injury which would have been relevant in this hearing, where *54 the patrolman is on trial for unauthorizedly leaving his post and the sequelae thereof, and explains that he did so because his stomach was ailing as a result of something he had eaten? Perhaps the head injury would be relevant if the petitioner’s excuse dealt with a related ailment. Then one might reasonably infer that perhaps the lapse here was caused by a recurrence of the old injury. That, however, is not this case.
It may fairly be assumed that not every attorney performs his professional services faultlessly. If the results of proceedings or trials were to be reversed on the objection by defendants that counsel have erred in defending them, the entire process of the administration of justice would have to be completely overhauled. For one could, if he looked diligently enough, find an “ error ” by counsel at some stage of any legal proceeding. But the judicial process is neither so helpless nor so futile. Before a reversal may be had on the ground that counsel is inept, his errors must be flagrant (Burton v. United States, 151 F. 2d 17). Beaney, in his book entitled “ The Right to Counsel in American Courts ” [1955] at page 122, says: “ Obviously there are few, if any, perfectly conducted defenses, and all that a defendant may expect is a fair hearing and substantial justice ”.
In People v. Tomaselli (7 N Y 2d 350, 353, supra) the defendant claimed that his legal representation was “ stunted and withered; so deficient and inadequate as to amount to a sham and a mockery of justice ”. In that case, a court-assigned attorney advised the plea of guilty 10 minutes after he was assigned. The court (per Fuld, J.) said (p. 356): “ The applicable rule may be briefly stated. The court will be deemed to have denied effective representation and assistance of counsel if, and only if, under the circumstances, it was not reasonably likely that the accused could have been adequately advised or aided * * *. In short, there is denial of effective representation of counsel only when the representation given is so patently lacking in competence or adequacy that it becomes the duty of the court to be aware of it and correct it.” Obviously, that is not this case.
The motion is denied and the petition and proceedings are dismissed. An order has been duly entered to that effect.

 The draftsmen of the stipulation probably intended to state that “ the remaining issues ” of the proceeding were those of (a) counsel and (b) punishment (emphasis supplied). But, as worded and argued by the petitioner personally and by counsel for both of the parties, the document reads that “ the main issues” were those mentioned (emphasis supplied). What effect that has in the context of a proceeding such as this, is difficult to conjure. I have therefore undertaken herein to consider as well other issues raised in the petition.