In the Matter of JAMES T. BROWN, JR., Petitioner, v MICHAEL J. CODD, Individually and as Commissioner of the Police Department of the City of New York, Respondent.

First Department, June 1, 1978

## APPEARANCES OF COUNSEL

*Eugene Prosnitz* for petitioner.

*Carolyn E. Demarest* of counsel *(Leonard Koerner* with her on the brief; *Allen G. Schwartz, Corporation Counsel),* for respondent.

## OPINION OF THE COURT

MURPHY, P. J.

Petitioner Brown was appointed as a patrolman in the New York City Police Department on June 26, 1963. In the early months of 1974, he was charged with: (1) failing to care for his off-duty revolver with its resultant loss on January 8, 1974; (2) engaging in an off-duty occupation without permission on November 4, 13 and 15, 1973; (3) reporting sick to his command 10 minutes after the start of his duty tour when regulations required that he report sick at least two hours prior to the start of his duty tour.

A hearing was held on June 5, 1974 before Hearing Officer Ganun. Police Advocate Doyle informed the Hearing Officer that the parties had been able to reach a negotiated settlement. Brown's attorney, David Breitbart, also apprised the Hearing Officer that his client was willing to take the negotiated plea explained to him by Police Advocate Doyle and the Deputy Commissioner of Trials, Philip Michael. Ganun then accepted a plea of guilty to the first charge and *nolo contendere* to the other two charges. The Police Advocate agreed that he would not press a fourth charge relating to Brown's failure to give his telephone number to his district surgeon. The Hearing Officer ended the hearing with the following remarks:

"The Respondent will be fined twenty *[sic—*actually thirty] days pay, twenty days to be exacted immediately and ten days will be suspended upon the completion of a probationary period of one year.

"The Respondent will be assigned to a disciplinary proba-

tion of one year, in the event that at the end of the probationary period his conduct and job performance is satisfactory the ten days will be dismissed. If other than—if his performance is not satisfactory the Police Commissioner shall have the option to assess the ten days penalty.

"I have been advised to inform you, Officer Brown, that as counsel have indicated that if you are the subject of additional charges within the next year and as a result of those charges you are convicted, that you stand a very likely chance to being dismissed from the Department. Do you understand that?"

Brown indicated that he did understand and the hearing was concluded.

Police Advocate Doyle informed the petitioner by telephone on September 2, 1974 that the plea agreement had been rejected by respondent Codd. In a letter dated September 17, 1974, Deputy Commissioner Michael wrote the petitioner: "Dear Police Officer Brown: Your mailgram of September 14, 1974 to the Police Commissioner has been referred to me. The plea you submitted in the trial room was contingent upon acceptance thereof by the Police Commissioner. Your plea and penalty has not been deemed acceptable and the Police Commissioner has directed that a full trial on the merits be held. Your former plea is rescinded and will not be held to prejudice you in any way."

The hearing was reconvened on September 19, 1974. Michael suspended the petitioner on that date because he appeared without an attorney. At that hearing, Michael informed the petitioner it was he who had rejected the negotiated plea of June 5, 1974.

On October 4, 1974, the petitioner was restored to limited duty and the case was adjourned until October 24, 1974. On that date, counsel reached a stipulation before Deputy Commissioner Michael with regard to the three charges. It was agreed that: (1) After losing his gun, petitioner followed proper procedure in reporting the loss to the Nassau County Police Dept. and the Long Island Railroad; (2) Petitioner had violated the "moonlighting" regulation because he had failed to seek annual renewal of the permission that had been granted to him; (3) Petitioner did not notify the sick desk two hours before the tour of duty because he was unable to reach a telephone.

On November 6, 1974, a hearing was scheduled for November 20, 1974, to set the penalty on the three charges. Brown

had reported sick the prior day and was not present at that hearing. The Deputy Commissioner denied a motion by petitioner's attorney for an adjournment and directed the hearing to proceed. However, petitioner's counsel did cross-examine the department's witnesses and he did afford the petitioner an opportunity to cross-examine the department's witnesses at a later date, if so advised. The testimony at that hearing will not be detailed in depth. Suffice it to say that it ranged from the opinion of Assistant Chief Inspector Bouza that the petitioner was "unfit to wear the uniform", to the evaluation of petitioner's most recent commander, Captain Neylan, that his performance had been "satisfactory".

Deputy Commissioner Michael recommended that the petitioner be found guilty on the three charges and that he be dismissed from the Police Department. Respondent Codd approved Michael's recommendation and petitioner was dismissed by order dated February 4, 1975.

■ Traditionally, the Police Commissioner has retained the ultimate power to discipline the members of his department (Administrative Code of City of New York, § 434a-14.0, subd a; *Matter of Kelly v Monaghan,* 9 AD2d 92, 94). Historically, the Deputy Commissioner of Trials, his Assistant Deputy Commissioners and Hearing Officers have been empowered to hold hearings and report to the Police Commissioner with their recommendations. (New York City Charter, § 432; Administrative Code, § 434a-14.0, subd b; *Matter of Ross v Murphy,* 37 Misc 2d 47, 51, 52; cf. *Matter of Greenwald v Codd,* 54 AD2d 626, lv to app den 41 NY2d 803.) Despite this accepted dichotomy in the disciplinary process, we can find neither legal nor policy impediments that would preclude the Deputy Commissioner of Trials from entering into plea settlements in the disciplinary arena. At a time when the Police Commissioner must tend to an increasing number of administrative details and problems, we would find that he has the authority and prerogative to permit his Deputy Commissioner of Trials to enter into plea settlements (New York City Charter, §§ 432, 1101; Administrative Code, § 434a-14.0, subd b). The delegation of final decision making powers is not a novel idea and has been espoused by at least one former commissioner in a collateral but equally important area (cf. *Matter of Juno Operating Corp. v Police Dept. of City of N. Y.,* 22 Misc 2d 676 —revocation of a cabaret license).

■ While a Hearing Officer's powers are concededly less

than those of the Deputy Commissioner of Trials, the uncontradicted testimony of petitioner's attorney indicated that Michael was a party to the off-the-record discussion leading to the June 5, 1974 settlement before Hearing Officer Ganun. Neither the respondent nor Michael has come forward with any proof suggesting that Michael did not have the power to enter into this plea settlement. Thus, it may be fairly stated that, at the very least, Michael had apparent, if not actual, authority to settle this disciplinary proceeding.

For a period of three and one-half months after the plea settlement, the respondent commissioner acquiesced in the settlement. In any event, the trial transcript seems to show that it was Deputy Commissioner Michael rather than the respondent who ultimately rejected the plea bargain. This rejection of the plea bargain by Michael strengthens the conclusion that the Deputy Commissioner of Trials has assumed, if he has not actually been given, broad powers in the disciplinary area.

■ In the period before its rejection, the petitioner relied upon a plea settlement that was absolute upon its face. There was no indication in the record that the plea bargain was being conditioned upon the respondent's approval. The petitioner had the right to believe that his disciplinary proceeding had been amicably resolved. To rule otherwise would be to permit the Police Commissioner to reject a plea at any time, even one or two years after it was made. Moreover, the petitioner should not be placed at a disadvantage in garnering evidence in his defense because he chose, in good faith, to rely upon the straight-forward representations of a senior officer in the Police Department. Lastly, it should be observed that the Court of Appeals, in a different factual setting, has recently reaffirmed the proposition that plea settlements should not be lightly disregarded by the various agencies and officers of this State (*Matter of Chaipis v State Liq. Auth.,* 44 NY2d 57; see, also, *People v Griffith,* 43 AD2d 20). For all the foregoing reasons, we would reinstate the June 5 settlement as a valid plea bargain.

■ Even if the plea bargain were not reinstated, we would reduce the punishment of dismissal since it is so disproportionate to the offenses, in light of all the circumstances, as to be shocking to one's sense of fairness (*Matter of Pell v Board of Educ.,* 34 NY2d 222, 233). The petitioner evidently had an "attitude" problem that resulted in insubordination toward

superiors on various occasions over the years. He was found guilty and reprimanded in four separate disciplinary proceedings prior to the instant one. Nonetheless, in recent years, the petitioner has remarried and has apparently become more amenable to orders from his superiors. It should be further emphasized that the petitioner's integrity has never been challenged. He had been commended in recent years for many quality arrests and his most recent commander has found his performance to be satisfactory. While we in no way condone petitioner's misconduct, he will be amply punished by a fine of 30 days' pay. Twenty days will be exacted immediately; upon the satisfactory completion of a probationary period of one year, the fine for the remaining 10 days will be suspended. If the petitioner is convicted of an additional charge during his probationary period, he will be subject to dismissal from the department.

■ With regard to petitioner's claim for back pay, the law is clear that he should not be able to receive back pay for any unreasonable delay in hearing this matter as was caused by his own conduct *(Gerber v New York City Housing Auth.,* 42 NY2d 162, 165). Since this issue cannot be resolved on the present record, this matter must be remanded to Special Term to determine the outside time limit, within which this proceeding should have been perfected *(Matter of Short v Nassau County Civ. Serv. Comm.,* 59 AD2d 157). At that hearing, the court will also deduct from his back pay any compensation or unemployment benefits received by the petitioner during the period covered by the award *(Matter of Haynes v Board of Educ.,* 57 AD2d 959).

■ In passing, brief comment will be made on certain "due process" deficiencies found in this disciplinary proceeding (see, generally, 1 NY Jur, Administrative Law, § 123). Had we not reinstated the plea bargain and reduced the penalty imposed, we would have ordered a new hearing because of these errors. First of all, the Deputy Commissioner improperly limited the cross-examination by petitioner's attorney. The latter should have been given leeway to examine the department's witnesses with regard to the individual facts and incidents that caused them to form their general opinion of the petitioner. Likewise, counsel should have been allowed to impeach Captain Skelley's credibility by exploring the circumstances under which he was demoted from Deputy Inspector. Secondly, the Deputy Commissioner abused his discretion in not adjourning

the hearing of November 20, 1974. While many witnesses would have been inconvenienced by this delay, the petitioner's right of confrontation was of supervening importance. If the Deputy Commissioner doubted the validity of petitioner's sickness, an appropriate investigation should have been ordered and sanctions imposed, if warranted by the facts.

Accordingly, the determination, dated February 4, 1975, finding the petitioner guilty on the three charges and dismissing him from the Police Department, should be modified, on the law, by vacating the portion thereof as imposes the penalty of dismissal. The penalty should be reduced to a fine of 30 days' pay. Twenty days will be exacted immediately; upon the satisfactory completion of a probationary period of one year, the fine for the remaining 10 days will be suspended. If the petitioner is found guilty of an additional charge during his probationary period, he will be subject to dismissal from the department. This matter should also be remanded to Special Term for a hearing to determine the petitioner's back pay in accordance with the guidelines set forth in this opinion. As modified, the determination should otherwise be confirmed, without costs.

LYNCH, J. (concurring). I concur in the result reached but only for the reason that the punishment of dismissal is so disproportionate to the offenses as to shock one's sense of fairness.

BIRNS and EVANS, JJ., concur with MURPHY, P. J.; SILVERMAN and LYNCH, JJ., concur in an opinion by LYNCH, J.

Determination of the respondent, dated February 4, 1975, unanimously modified, on the law, by vacating the portion thereof as imposes the penalty of dismissal, and the penalty is reduced to a fine of 30 days' pay. Twenty days' fine is to be exacted immediately; upon the satisfactory completion of a probationary period of one year, the fine for the remaining 10 days will be suspended. If the petitioner is found guilty of an additional charge during his probationary period, he will be subject to dismissal from the department. This matter is remanded to Special Term for a hearing to determine the petitioner's back pay in accordance with the guidelines set forth in this court's opinion. As so modified, the determination is otherwise confirmed, without costs and without disbursements.