TOWN OF WEST NEW YORK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT, v. HARRY BOCK AND DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY, RESPONDENTS.

Argued September 11, 1962—Decided November 19, 1962.

501

Mr. *Samuel L. Hirschberg* argued the cause for appellant.

Mr. *Sydney I. Turtz* argued the cause for respondent Bock (*Messrs. Cohen and Turtz*, attorneys).

Mr. *William L. Boyan*, Deputy Attorney General, argued the cause for respondent Department of Civil Service (*Mr. Arthur J. Sills*, Attorney General of New Jersey, attorney; *Mr. Boyan*, of counsel).

The opinion of the court was delivered by

HALL, J. This is a civil service case. The respondent Bock, a fireman of the Town of West New York in the classified service, was dismissed from his position by the appointing authority after a hearing on charges. He appealed to the Civil Service Commission which, following a *de novo* hearing, reduced the penalty to suspension without pay for a period of approximately 15 months. On appeals from the Commission's judgment by both the town and Bock, *R. R.* 4:88–8, the Appellate Division modified the punish-

ment to a 6 months' suspension but otherwise affirmed. 71 *N. J. Super.* 143 (1961). We granted the town's petition for certification. 37 *N. J.* 135 (1962). Involved are important questions under the civil service law with respect to discipline of employees in the municipal service. Some further detail of the facts is needed to point up the several issues, which have proliferated during the course of this originally uncomplicated matter.

On October 7, 1959 Bock was served with charges signed by the town fire chief. The document was a form entitled "Preliminary Notice of Disciplinary Action," required at the time by the State Department of Civil Service to be served on a permanent employee in the classified service against whom disciplinary action beyond a 5-day suspension was proposed to be taken. The first item printed on the form reads: "You are hereby notified that, pending hearing, you are * * * suspended" for a specified period, "removed," "demoted" from one named position to another, or "fined" an inserted amount. The choice was to be made by placing a check mark in a square opposite the selected alternative. Then followed a space for typing in the reasons, which constitute the charges. The body of the form concluded with this statement: "Before final action is taken in this case a hearing will be held, at the time and place stated below, at which time you may appear and offer any evidence or testimony in your defense."

In Bock's case, a mark was placed in the square opposite "suspended" but the printing and spaces for designating a period of suspension were crossed out. All other squares were left blank. The charges were specified as 3 separate instances of violation of fire department regulations consisting of tardiness in reporting for duty, varying from 15 minutes to a half hour, on 3 named dates within the preceding 3 or 4 weeks. The notice ended with a designation of the time of hearing, some 6 days after service of the notice, before the appointing authority, who, in this case, since West New York was governed by the commission form, was the Director

of Public Safety. There was nothing to indicate that dismissal was the contemplated penalty or that anything but the 3 recited instances of tardiness was to be considered.

At the hearing the matter was prosecuted by the assistant town attorney. Bock appeared without counsel and was first asked to plead to the 3 charges of lateness. He replied that he was guilty. Following the plea, the municipal attorney advised that, "in view of the previous record of Fireman Bock * * * we proceed to establish" not only guilt of the present charges, "but also present" Bock's "complete background" in the department. Proof of the current offenses was then given by Bock's company commander. The department chief was called to testify "as to the status of Fireman Bock in reference to charges or tardiness in the past against him." Bock objected, asking whether his penalty was to be judged on the past or on present charges and adding "It may show bias to my penalty." The Director replied that the present charges were added to his past record and that he "must know the entire record to determine the entire penalty." The chief then testified from Bock's personnel file as to 5 offenses between 1943 and 1952, mostly for tardiness, as to which charges had been preferred, guilt found and penalties imposed, in no case exceeding suspension or fine for longer than 15 days. He further read entries of numerous other instances of tardiness, some trivial, some serious, during the years 1948 through 1956 from the company journal records and daily reports made by the commanding officer at the time. As was elicited when the same subject matter was explored at the hearing before the Civil Service Commission, West New York has no time clock or roll-call system and the attendance record is taken by the officer in charge at the particular time simply noting on the log who is present in the fire house at the appointed hour. There was no proof presented to the Director to substantiate these entries or to establish that they had ever been admitted by Bock. In addition, it appears that the so-called personnel record consisted only of notations of promotions, commendations, and adjudicated disciplinary charges

and did not amount to a record of service relative to efficiency. See *R. S.* 11:22–35 and Commission Rule 56 (1949).

At the conclusion of the testimony, the Director announced:

"If your past record were one that could be easily dismissed or overlooked, I could then feel free to judge you on today's charges and fine you in accordance with that and forget the incidents, but for the welfare of the West New York Fire Department and I feel, for your own welfare, so that this condition that you are creating by constant tardiness and neglect of duty shall be avoided in the future and to keep the morale of the West New York Fire Department on the high plane it justly deserves, I find you guilty and, therefore, must dismiss you from the West New York Fire Department starting immediately."

This was the first indication to Bock that dismissal from his position was involved. After Bock's protest, the Director added: "* * * today's charges are not the only charges that are involved. The charges date back since you have joined the Department * * *" The town thereafter filed with the Civil Service Commission a copy of the required notice to Bock, entitled "Final Notice of Disciplinary Action," *N. J. S. A.* 11:22–38, Commission Rule 59 (1949), which again recited only the 3 tardiness charges upon which he had been found guilty and set forth that he had been removed by reason thereof.

Bock then engaged counsel who filed a letter notice of appeal with the Commission. *N. J. S. A.* 11:22–38; *R. S.* 11:22–39. Two grounds were specified: first, that the penalty of removal had been dictated by political reasons rather than any infractions of the rules and, second, that the penalty was too harsh and entirely out of line with the offenses committed. During the course of the subsequent hearing it was made plain that the latter ground was intended to encompass a claim that Bock had actually been tried and found guilty below on what amounted to a charge of chronic tardiness constituting continual neglect of duty and that he had not been notified of such grounds in the charges served upon him; and, in addition, that, in any event, the instances of tardiness taken from the log books should not be considered

since they were not substantiated and had never been adjudicated formally or informally. At the outset of the hearing, one of the two sitting Commissioners raised the further question that the notice originally served on Bock did not indicate removal was contemplated and he might therefore have been lulled into a false sense of security in making no defense before the municipal authority.

It was stipulated that Bock had pleaded guilty below to the 3 charged incidents of tardiness and no evidence was offered to dispute his guilt thereof. The proofs offered by the town took substantially the same course as at the municipal hearing and were received over objection based on the claim noted above.[1] The Commission did, however, limit

---

[1] An appeal to the Commission from municipal action must be heard *de novo* and determined only on evidence presented anew to it. *R. S.* 11:22–39. *Borough of Park Ridge v. Salimone*, 36 *N. J. Super.* 485, 498 (*App. Div.* 1955), affirmed 21 *N. J.* 28 (1956) ; *Sullivan v. Roe*, 18 *N. J.* 156, 161 (1955) ; *Newark v. Civil Service Commission*, 114 *N. J. L.* 406, 413 (*Sup. Ct.* 1935). The testimony taken at the local hearing has no place before the Commission and is not properly reviewable. *County of Essex v. Civil Service Commission*, 98 *N. J. L.* 671, 675 (*Sup. Ct.* 1923). The proceedings and evidence at the local hearing hereinbefore described were not before the Commission except for the previously quoted paragraph stating the Director's conclusions, which was introduced when he was cross-examined. The full record thereof is before us, however, by virtue of its inclusion in the town's appendix filed with the Appellate Division in order to support a contention that the Commission has no power to modify a locally imposed penalty, absent a clear abuse of discretion which is not the case here.

One other position was asserted before the Commission by Bock. He had tenure as a paid municipal fireman under *N. J. S. A.* 40:47–6 as well as civil service protection. The provisions of the civil service law governing the municipal service save rights given employees of police and fire departments under any other law. *R. S.* 11:22–24. Under the tenure statute, as amended by *L.* 1947, *c.* 292, a municipal hearing on charges may be held no sooner than 15 days after service of the charges. Here the hearing was at an earlier date. Bock moved before the Commission to dismiss the charges on that ground. It held controlling the provisions of the civil service law, which provides only that the municipal employee must be allowed "a reasonable time to make answer" to the charges. *N. J. S. A.* 11:22–38. On his cross-appeal to the Appellate Division, Bock

the proof of so-called prior offenses to those beginning with the year 1952 on the ground that earlier instances were too remote. The proofs as so limited showed one disciplinary action, based on a charge of tardiness in 1952, resulting in a fine amounting to 2 weeks pay and a warning as to the next offense, and a log record of some 20 instances of tardiness within the next 7 years. Of these none occurred in 1959 beyond the 3 which are the subject of the current charges and only one in 1958. There was no substantiation of any of these log entries and no proof of any admission by or warning to Bock with reference thereto.

The decision of the Civil Service Commission was not rendered until 11 months after it had heard the appeal— an unconscionably long time.[2] We are advised by counsel for the Commission that the delay was occasioned because the two Commissioners were unable to agree upon a conclusion earlier. Be that as it may, the great lapse of time led to a peculiar result. It was first held that Bock was not liable to removal

---

asserted the point again. That tribunal, without passing on which statute controlled, found it to be without substance in any event because no objection had been made at the municipal level and a guilty plea rather than a defense had been entered there. 71 N. J. Super., at page 151. Since the contention is not renewed before us, we need not comment upon it or pass upon the broader question, raised by the Commission's basis of decision, of the relation, as to procedural matters, between a tenure law and the civil service act where an employee is protected by both. See Edelstein v. City of Asbury Park, 12 N. J. Super. 509, 512 (App. Div. 1951); cf. Wildwood v. Neiman, 44 N. J. Super. 209 (App. Div. 1957).

2 R. S. 11:15-6, a provision of the civil service law relating to the state service, says: "The commission shall, within fifteen days after the completion of the * * * hearing, and sooner if practicable, render a decision * * *." On the assumption that this provision is applicable to the municipal service as well by reason of N. J. S. A. 11:2A-1 (a subject to be later discussed in another connection), it has been held to be directory and not mandatory. Dutcher v. Department of Civil Service, 7 N. J. Super. 156, 160-161 (App. Div. 1950); Orange v. DeStefano, 48 N. J. Super. 407, 414 (App. Div. 1958). Nonetheless, the statutory language expresses a strong legislative policy of prompt determination for self-evident reasons, which should be conscientiously adhered to as far as is humanly possible.

under any circumstances because that contemplated disposition was not indicated by an appropriate marking on the notice of charges served upon him, and he had been led to plead guilty by what later proved to be an erroneous notion that he faced at most a suspension, such disciplinary measure being the only one checked on the form. We take it this holding was reached as matter of law since there was no evidence on the question. It was further held that the municipal authority "erred in using * * * past alleged acts of tardiness in establishing the charges upon which he based his dismissal." We read this to mean the commission decided, on the basis of the earlier quoted conclusions of the Director, that Bock had actually been tried and convicted on charges of habitual and chronic tardiness and neglect of duty, of which he had been given no notice, rather than on the 3 specific instances of tardiness listed. No mention was made of Bock's contention that the log entries of lateness could not be considered in any event because they were neither substantiated nor adjudicated. The Commission concluded that, based on the 3 instances alone and by reason of the public seriousness of a fireman's being late for duty, Bock should be suspended without pay from October 6, 1959 (when he was originally suspended upon the preferring of the charges) until the date of the Commission decision, January 9, 1961. Counsel for the Commission has informed this court that the period of suspension fixed was determined in accordance with a Commission policy that a municipality, in the event an employee's appeal does not result in reinstatement without loss of pay, should not have to pay salary for any period when no services were rendered. This would have been the case here if the suspension were for a lesser period than that ordered. Therefore, even assuming that the Commission was right in holding that dismissal could not legally be ordered because of the manner in which the notice form was completed, it did not actually determine on the merits what would be a proper penalty for the 3 offenses specifically charged. And, of course, there was no consideration of

whether dismissal would be appropriate if that disposition were legally possible.

On its appeal to the Appellate Division, the town, in seeking reinstatement of the dismissal, principally urged that the Civil Service Commission is without power to modify a penalty imposed by the appointing authority absent a clear abuse of discretion. Consequently it said that the guilty plea and the proof at the municipal level of prior derelictions warranted dismissal and precluded any commission modification. It further urged that there was no evidential basis for the Commission's conclusion that Bock had been misled to his prejudice because the initial notice of charges did not indicate removal as the contemplated penalty and that the municipal authority had used Bock's prior record not to establish charges other than those of which he had been given notice, but only to determine the appropriate penalty for the 3 specific instances in the light of his past record.

In support of the Commission's rulings in the latter respects, Bock reasserted his position that the journal entries of tardiness could not be considered for any purpose since they had not been substantiated or adjudicated.

Bock's cross-appeal had alternative aspects. On the one hand, he contended that the Commission could not validly order a suspension for longer than 6 months because of an alleged statutory limitation, *R. S.* 11:15–5, *N. J. S. A.* 11:2A–1, to that effect, and therefore that the determination should, in any event, be modified to suspension for no more than 6 months. In reply, both the Commission and the town took the position that the statutory provision was not mandatory but permitted suspensions at least until the entry of the decision of the Commission. Alternatively, Bock asserted that he was entitled to reinstatement with full pay from the date of his original suspension because the municipal hearing was held sooner than 15 days after the service of charges (see footnote 1, *supra*) and because the Commission refused to allow evidence that the penalty of dismissal was actuated by political motivations rather than meritorious considerations.

The Appellate Division, 71 *N. J. Super.* 143, held initially that the Commission had both statutory power and sound reason to modify the dismissal penalty and that removal was too severe "under the circumstances." The court further held that the 6-month limitation on suspension was binding on the Commission and, exercising its original jurisdiction, *R. R.* 4:88–13; 1:5–4(a), 2:5, because of the great length of time which had elapsed, went on to decide that a penalty of 6 months' suspension without pay was "reasonable and proper" "[u]pon a review of the facts as contained in the record." The court disagreed with the Commission's holding that dismissal was barred as a penalty for the reason that the initial notice of charges did not indicate that this result was contemplated. It found that any such irregularity in the form was not prejudicial since Bock knew at the time of his *de novo* hearing before the Commission that dismissal was sought.

The opinion further stated that, while an employee's past record "is not admissible to establish the charges upon which his dismissal is predicated," it "may be considered in determining the penalty to be imposed" and so the municipal authority here could consider it for that purpose. The discussion concluded with this sentence: "However, the penalty cannot be imposed as punishment for his past record, it must bear a reasonable relation to the offense for which he is presently charged." 71 *N. J. Super.*, at *p.* 152. The court's meaning, in the light of the issues before it, is not entirely clear to us since "past record" is nowhere defined. It would seem the court tacitly disagreed with the Commission's finding that Bock had really been convicted below for habitual tardiness and neglect of duty with which he had not been charged. But we are not sure whether the court meant that the hearer at the town level, and so also the Commission, could properly and should consider Bock's entire record and that the Commission was wrong in excluding offenses prior to 1952 as too remote. It did not expressly advert to the

questions raised by Bock that the unsubstantiated and un-adjudicated tardiness entries in the company journal were not entitled to consideration. We assume, however, it believed such items to be a proper part of the employee's record. So we cannot be certain exactly what "facts" or "circumstances" the court took into account in reaching its independent judgment that a 6-month suspension was "reasonable and proper" and that dismissal was too severe. We do know, however, that it felt punishment, even with consideration of past record, must bear a reasonable relation to the offense presently charged. If that view is an erroneous one, the propriety of the court's determination of penalty is further brought into question.[3]

---

[3] As previously indicated the Appellate Division also had before it Bock's claim that the Commission erred in refusing to hear evidence in support of his contention that the penalty of dismissal imposed by the Director was motivated by political reasons. The court held, 71 N. J. Super., at pages 150–151, that Bock had no cause for complaint on this score because the rejected questioning arose on cross-examination of the town's witnesses going beyond the scope of their direct examination and no affirmative proofs on the subject were tendered on Bock's own case. Technically this position is correct, but the Commission did make it most plain in ruling on the cross-examination that it would not permit any testimony on the contention. Consequently any effort by Bock to introduce such proofs would have been futile. Nonetheless good practice dictated that an offer of proof be made for the information of a reviewing tribunal. In view of our disposition of the case and of the fact that Bock does not again raise the issue here, we need not consider the question beyond some brief comment for guidance in future cases. We think the Commission was completely wrong in its refusal to allow exploration of the matter. The most fundamental of all civil service rights is that no public officer or employee "shall be removed, discharged, reduced in pay or position or otherwise discriminated against because of his religious or political opinions or affiliations." R. S. 11:22–11. While a claim of political motivation and bad faith does not have the same impact in a case like the present one where guilt is admitted and penalty is the only issue as it does where a position is abolished or an employee dismissed for alleged reasons of economy, Weaver v. New Jersey Department of Civil Service, 6 N. J. 553 (1951) ; Greco v. Smith, 40 N. J. Super. 182 (App. Div. 1956) ; Chirichella v. Department of Civil Service, 31 N. J. Super. 404 (App. Div. 1954) ; see also Devine v. Plainfield, 31 N. J. Super. 300 (App. Div. 1954),

The town's appeal to us presents alternative positions. It reiterates that the original penalty of dismissal should be reinstated because the Commission may not modify punishment locally imposed unless a clear abuse of discretion is found, which it claims does not exist here. It further contends that a court has no power to disturb discipline so fixed or to determine a penalty itself because of the constitutional doctrine of separation of powers. Alternatively, it asserts, at least, that the 15-month suspension imposed by the Commission should not be disturbed because the statutory limitation of 6 months is not mandatory. For the same purpose it also urges that the Appellate Division, in arriving at its independent conclusion that suspension for 6 months was the appropriate penalty, did not properly consider and give full effect to Bock's past record because the court wrongly held that the punishment must bear a reasonable relation to the present offense, even after taking the past record into account. This contention makes it necessary for us to consider the questions previously mentioned relating to the original charges and the use of past record which otherwise would not be involved in this appeal in view of the position now taken by Bock as outlined below.

The Commission has not here expressed its view on all the issues. It joins with the town in the latter's position that the 6-month statutory limitation on suspension is not mandatory, but disagrees with the municipal contention that a court lacks power to modify a penalty imposed by the Commission and to reach its own conclusion. However, it supports the penalty fixed by the Appellate Division as the best course in this case if it be found the 15-month suspension which the Commission imposed is unlawful.

Bock did not cross-petition for certification and is now content with the 6-month suspension without pay fixed by

it may still have profound significance in the Commission's *de novo* determination of the appropriate penalty in the former type of case, *East Paterson v. Department of Civil Service*, 47 *N. J. Super.* 55, 63, 68–69 (*App. Div.* 1957), and cannot be arbitrarily excluded.

the Appellate Division. He urges affirmance of that tribunal's judgment. His prior position that he was entitled to reinstatement without loss of pay is therefore no longer involved.

I.

First to be considered are the town's contentions that the Civil Service Commission may not modify disciplinary action taken by the appointing authority in municipal service cases absent a clear abuse of discretion and that a reviewing court has no power to determine a penalty itself.

A.

While the town's position that the Commission lacks the power of modification once had vitality, we conclude that it has not been tenable since *L.* 1938, *c.* 76, with reference to municipal discipline in the form of suspension, fine or demotion, and since *L.* 1946, *c.* 184, with respect to dismissal. The point has not been squarely raised previously in this court, but in *Kennedy v. City of Newark,* 29 *N. J.* 178, 189-190 (1959), not a civil service appeal, we clearly intimated that this would be our holding when the precise question came before us. The Appellate Division had earlier expressly so held. *Dutcher v. Department of Civil Service, supra* (7 *N. J. Super.,* at *page* 162); *East Paterson v. Department of Civil Service, supra,* 47 *N. J. Super.,* at *page* 64. *Cf. City of Plainfield v. Simpson,* 50 *N. J. Super.* 250, 262 (*App. Div.* 1958); *Rushin v. Board of Child Welfare,* 65 *N. J. Super.* 504, 517-518 (*App. Div.* 1961).

Viewing the matter as an original proposition, the legislative history, useful, as well, as essential background for the other questions before us, demonstrates beyond any doubt that our conclusion is the only tenable one.

New Jersey's first civil service law, *L.* 1908, *c.* 156, *p.* 235, applicable to both state and municipal (including county) service, substantially followed the original concept of pri-

mary emphasis on appointments to the public service solely on the basis of merit, with the appointing authority, like any other employer, having a free hand to separate employees for disciplinary reasons or because of inefficiency or incompetency. The theory was that the only express protection necessary was a restriction on action based upon political or religious reasons. *Kaplan, The Law of Civil Service* 225, 249 (1958). See also *Civil Service Assembly, Personnel Report Series No.* 535, *Crouch and Jamison, Hearings and Appeals: A Guide for Civil Service Commissioners* 8 (1953) and *Personnel Report No.* 553, *Crouch and Jamison, The Work of Civil Service Commissions* 12 (1956).

So the main thrust of the 1908 law was directed to the matter of appointments. Removal or demotion for religious and political reasons was expressly prohibited, but the act had nothing to say about local discipline for other causes beyond a requirement that the affected employee be furnished with a written statement of reasons and allowed a reasonable time within which to make written answer thereto. *Sec. 24, p.* 250. No hearing was required and no administrative appeal as of right was provided. The Commission was broadly empowered to make "investigations," apparently only on its own motion, but seems to have been given no authority to act with regard to that which such investigations disclosed. A disciplined employee could obtain review and relief only through and within the limitations of *certiorari* to the appointing authority's action. See *Edwards v. Petry,* 90 *N. J. L.* 670 (*E. & A.* 1917) ; *County of Essex v. Civil Service Commission,* 98 *N. J. L.* 671, 672 (*Sup. Ct.* 1923).

The first change was effected by *L.* 1915, *c.* 120, which authorized a summary review by a Supreme Court Justice of any official's action in selecting persons for appointment or removing employees from office, claimed to be unlawful under the 1908 law. Such review could be obtained by "any citizen of the State," which included an affected employee. Apparently such a tribunal could not modify a penalty of

dismissal, on an affirmance of guilt, if there had been no abuse of discretion. See *In re Pelry*, 91 *N. J. L.* 51 (*Sup. Cl.* 1917).

An administrative appeal *de novo* to the Civil Service Commission was created by *L.* 1917, *c.* 236, amending section 24 of the 1908 act, and granting this right to any covered state, county or municipal employee who had been "removed, discharged, fined or reduced." This enactment is the foundation of our present law governing appeals from such disciplinary action by county and municipal employees, principally *N. J. S. A.* 11:22–38 and *R. S.* 11:22–39, and until 1930 controlled appeals by state servants as well. It also forms the keystone for the now completely accepted view in this State that civil service protection amounts to *lenure* during good behavior with dismissal of an employee possible only upon express charges of sufficient cause and full proof thereof. See *e.g.*, *Handlon v. Town of Belleville*, 4 *N. J.* 99, 109 (1950); *State of New Jersey, Deparlmenl of Civil Service v. Clark*, 15 *N. J.* 334, 341 (1954). This philosophy is totally at variance with the original concept.

The 1917 amendment retained the 1908 provisions for local dismissal, fine or demotion merely on written charges, answer and determination filed with the Commission, with no mention of a hearing. But it went on to provide that local action should not take effect until approved by the Commission, which approval could be forthcoming as a matter of course unless the affected employee applied to the Commission for an "investigation" of the charges within 10 (now 20) days. The Commission was directed to hear the case upon such application, receive all competent evidence and "determine the case upon the evidence presented." It was also empowered to direct a hearing on its own motion if no appeal was taken (now found in *R. S.* 11:22–40). See *Borough of Park Ridge v. Salimone, supra,* 21 *N. J.,* at *page* 45. But the Commission was limited to disapproval of the local penalty and could not modify. The effect of disapproval was reinstatement if the local action had been

discharge, and nullification in the event of punishment by fine or reduction. Disapproval was possible only where the Commission found that the employee was not guilty of the charges upon which he had been convicted at the local level. *Newark v. Civil Service Commission,* 115 *N. J. L.* 26 (*Sup. Ct.* 1935); *Stegman v. Civil Service Commission,* 14 *N. J. Misc.* 126, 182 *A.* 861 (*Sup. Ct.* 1936), affirmed o. b. 117 *N. J. L.* 422 (*E. & A.* 1937); *Maguire v. Van Meter,* 121 *N. J. L.* 150 (*E. & A.* 1938); *Newark v. Civil Service Commission,* 131 *N. J. L.* 100 (*Sup. Ct.* 1943). Therefore, it was said in the first cited case, 115 *N. J. L.,* at *pages* 29-31, that the Legislature had not entrusted the Commission with the right to substitute its judgment as to punishment and that the extent thereof was a matter "within the sound discretion of the departmental head; and there is no review unless, perchance, there be a clear abuse of discretion." (at *p.* 29). The position which the town here asserts would consequently be a valid one so long as the statute had remained in this posture. A vital change occurred in 1946, however, with origins traceable to other legislation enacted in 1930.

Abuses in many aspects of the administration of civil service had led to demands for reform and a bill was introduced in the Legislature (S–61, January 27, 1930) intended, according to the statement of purpose annexed, to supplant completely the 1908 statute and subsequent enactments. Included were somewhat differently worded provisions for discipline. Objections by municipalities resulted in a substitute measure applicable only to the state service which was adopted as *L.* 1930, *c.* 176. This act, now *R. S.* 11:3–1 to 11:18–2, inc., presently governs the state service. The 1908 law, with amendments and supplements, now *R. S.* 11:19–1 to 11:26–1, inc., remains to control the county and municipal services, except to the extent to which the two acts have been intermeshed by *N. J. S. A.* 11:2A–1, shortly to be discussed. The result has been very consider-

able confusion, suggesting the desirability of legislative clarification.

For present purposes the important difference between the 1917 amendment of the 1908 act and the 1930 statute is the following provision in section 34 of the latter (as it now reads in *R. S.* 11:15–6):

"The commission *may, when in its judgment the facts warrant it, modify or amend the penalty imposed* by the appointing authority *or substitute another penalty* for that imposed, except that removal from the service shall not be substituted for a lesser penalty." (Emphasis added.)

This provision for so much greater power than the Commission had in municipal appeals was early held to mean just what it so plainly says. *Varbalow v. Civil Service Commission,* 15 *N. J. Misc.* 444, 192 *A.* 88 (*Sup. Ct.* 1937).

This variance in commission power continued until *L.* 1938, *c.* 76, now part of *N. J. S. A.* 11:2A–1. By that act, *inter alia,* the provisions of section 34 of the 1930 state service law with reference to the power of the Commission to modify appointing authority action of suspension, fine or demotion on appeal, were made applicable to cases arising in the county and municipal service. And by *L.* 1946, *c.* 184, now also part of *N. J. S. A.* 11:2A–1, the modification power on appeal was extended to include, as well, cases where discharge had been ordered at the local level. The statement appended to the bill (S–105) said it would give the Commission authority to substitute a lesser penalty than discharge when "it is of the conclusion that the penalty imposed is inequitable and is not appropriate to the violation charged."[4]

---

[4] The 1938 and 1946 acts specifically refer to the provisions of *R. S.* 11:15–2 to 11:15–6, although the expressed purpose was only to incorporate into the municipal service law the penalty modification power of *R. S.* 11:15–6. These 5 sections constitute the removal provisions of the state service law, which differ in some respects from those in the municipal law. The question arises whether the provisions of *R. S.* 11:15–2 through 6 other than those permitting

We think this legislative history, culminating in the 1946 enactment with the statement of purpose just recited, conclusively establishes that since that date the Commission has been required, on a *de novo* hearing on appeal from municipal action, to redetermine the penalty just as it must redetermine guilt and that this is so even where the only issue may be the propriety of the penalty imposed below. The former rule of the overriding effect of punishment fixed by the appointing authority, absent a clear abuse of discretion, no longer lives and the town's contention is consequently without merit.

Equally devoid of substance is the town's argument that a court has no power to disturb a penalty fixed at the local level or on administrative appeal and may not itself determine appropriate punishment. Reliance is placed on

modification of local penalty are also incorporated and therefore govern municipal disciplinary proceedings. For example, *N. J. S. A.* 11:22–38 does not require a hearing at the local level and makes no mention of causes for removal. *R. S.* 11:15–2 provides that the Commission shall enumerate by rule reasons considered as just cause for discharge and prescribe by rule the procedure for handling such removals. The Commission, by Rule 59 (1949) which does not distinguish between state service and municipal service cases, requires a hearing by the appointing authority in *all* cases. The Appellate Division in one decision has since held, without mentioning the rule, that a hearing was not required at the local level in a case of a county employee. *Robertson v. Newcomb,* 27 *N. J. Super.* 314 (1953). See also *Sullivan v. Roe, supra,* 18 *N. J.* 156. In *Kennedy v. City of Newark, supra,* 29 *N. J.,* at *page* 190, this court said it was far from clear that the reference to *R. S.* 11:15–2 found in *N. J. S. A.* 11:2A–1 was designed to vest in the Commission the same power to specify causes for removal with respect to the local service as the former section gave it with regard to state service. But *cf. North Bergen Township v. Department of Civil Service,* 42 *N. J. Super.* 67 (*App. Div.* 1956). Other cases have inferentially suggested complete incorporation. *Weaver v. Department of Civil Service, supra,* 6 *N. J.,* at *page* 556; *Borough of Park Ridge v. Salimone, supra,* 21 *N. J.* 28; *Orange v. DeStefano, supra,* 48 *N. J. Super.,* at *page* 415. The question was mentioned but not decided in *City of Asbury Park v. Department of Civil Service,* 17 *N. J.* 419, 422 (1955). We need not determine it here except to the extent it may be involved in the questions discussed in II, *infra.*

the constitutional doctrine of separation of powers. The *Constitution of* 1947 specifically provides that this court and the Appellate Division "may exercise such original jurisdiction as may be necessary to the complete determination of *any cause* on review" (Emphasis added). *Art.* 6, *sec.* 5, *par.* 3. This power is implemented by *R. R.* 1:5–4(b), made applicable to the Appellate Division by *R. R.* 2:5. In addition, *R. R.* 4:88–13,·governing appeals from state administrative agencies, provides that in such proceedings "the court shall have power to review the facts and make independent findings thereon, which power may be exercised by it to such extent as the interests of justice may require." The right of the Appellate Division to exercise the power with respect to penalties in civil service cases has been soundly sustained. *Borough of Park Ridge v. Salimone, supra,* 21 *N. J.,* at *page* 39. This court itself exercised it to reverse the Commission and reinstate the penalty locally imposed in *City of Asbury Park v. Department of Civil Service,* 17 *N. J.* 419 (1955), a case which by-passed the Appellate Division. We also have no doubt of our authority to disagree with the intermediate tribunal and fix the punishment ourselves in order to finally and completely determine the cause on review where that course is indicated. The problem in such situations is not one of power, constitutional or otherwise, but whether the authority should be exercised in the particular situation.

## II.

The other issues which must be resolved in order to decide this case may be considered under two headings: (A) the original charges and the use of "past record," and (B) the 6-month suspension limitation.

## A.

█ We are convinced that the original notice of charges did not advise Bock that removal was the intended penalty if the hearing was to result in a finding of guilt. The form,

earlier described, is ambiguous. Assuming that the alternative courses of action printed at the top were intended to indicate the proposed discipline by means of checking one, *Marro v. Department of Civil Service,* 57 *N. J. Super.* 335, 343 (*App. Div.* 1959), it is clear no such indication was given here. This portion was so completed that Bock could reasonably have believed it to be telling him only that he was suspended pending hearing, a measure which the employer has the right to impose. *R. S.* 11:22–23; see *De-Marco v. Board of Chosen Freeholders,* 21 *N. J.* 136, 139, 145 (1956); *Ballurio v. Castellini,* 29 *N. J. Super.* 383, 390 (*App. Div.* 1954); *Vanderbach v. Hudson County Board of Taxation,* 133 *N. J. L.* 126, 129-130 (*E. & A.* 1945), *id.* at *pages* 499, 509 (*Sup. Ct.* 1946), affirmed 135 *N. J. L.* 349 (*E. & A.* 1947). Notice of the prospective penalty, however, is not a vital element of a statement of charges and we agree with the Appellate Division that Bock suffered no ultimate prejudice by the local failure to inform him thereon, since he knew by the time of the *de novo* appeal hearing that the town sought to dismiss him. Therefore, the Commission was not precluded from ordering removal if it should determine such as the appropriate discipline. We may add that the question has become academic for the future. The Commission has revised the form since *Marro,* so that it now clearly states that unless the charges are satisfactorily explained or defended at the hearing, the employee will be subject to the penalty indicated. A separate line is provided where suspension pending hearing may be shown if that course is to be taken.

More important, we are of the opinion that the original charges can fairly be read to give notice of only 3 specific lateness derelictions and that, as evidenced by the concluding statements of the Director, Bock was actually tried and found guilty for habitual tardiness and consequent chronic neglect of duty. The Commission properly so characterized the proceedings at the municipal level and quite correctly viewed the case as involving only the 3 instances specified.

■ Properly stated charges are a *sine qua non* of a valid disciplinary proceeding. It is elementary that an employee cannot legally be tried or found guilty on charges of which he has not been given plain notice by the appointing authority. The *de novo* hearing on the administrative appeal is limited to the charges made below. *Kramer v. Civil Service Commission,* 120 *N. J. L.* 599 (*Sup. Ct.* 1938); *Orange v. DeStefano, supra,* 48 *N. J. Super.,* at *page* 419; *cf. Marro v. Department of Civil Service, supra,* 57 *N. J. Super.,* at *pages* 344-345.

■ Just cause for dismissal can be found in habitual tardiness or similar chronic conduct. *In re Petry, supra,* 91 *N. J. L.* 51; *cf. County of Essex v. Civil Service Commission, supra,* 98 *N. J. L.,* at *page* 675. While a single instance may not be sufficient, numerous occurrences over a reasonably short space of time, even though sporadic, may evidence an attitude of indifference amounting to neglect of duty. Such conduct is particularly serious on the part of employees whose job is to protect the public safety and where the men serve precise shifts to afford continuous protection. A chronically tardy employee is, however, entitled to know that he is, in fact, being so charged, as was the case in *In re Petry, supra.* There a clerical employee was late every morning for more than a year. He admitted the conduct, as to which he had been repeatedly warned. Dismissal was held warranted.

■ Here, as we have said, the charges were limited to 3 single instances within the previous 4 weeks—not enough on the face to fairly say that the employee should thereby have realized he was being charged with chronic misconduct. The only safe course in charging chronic misconduct is to state specifically that the employee is being charged as an habitual offender, with a recital of the several instances warranting that characterization. And even then the difficulties of proof and defense of stale offenses dictate that specific instances may not run too far in the past. Equally important is avoidance of any defense that long delay in

pressing the charge constitutes employer acquiescence, as the Commission intimated was likely in the instant case. Past instances within such a reasonable period could include offenses where minor discipline already had been imposed. But *cf. Dutcher v. Department of Civil Service, supra,* 7 *N. J. Super.* 156.

■ There still remains the question of the use of an employee's "past record" in a disciplinary proceeding. It cannot, of course, be utilized to prove a present charge which is not one of habitual misconduct. However, it may be resorted to for guidance in determining the appropriate penalty for the current specific offense. *Rushin v. Board of Child Welfare, supra,* 65 *N. J. Super,* at *page* 517. *Cf. Newark v. Civil Service Commission,* 114 *N. J. L.* 406, 410 (*Sup. Ct.* 1935). *R. S.* 11:15-5, contained in the state service statute, says that the Commission hearing on appeal "shall be for the purpose of fairly determining whether the employee involved, by reason of his act as charged and *his record of service,* merits continuance therein or should be removed therefrom or otherwise disciplined for the good of the service." (Emphasis added) There is no comparable provision in the municipal law and it is arguable whether such authorization is incorporated therein by *N. J. S. A.* 11:2A-1. See footnote 4, *supra.* We need not decide this question, however, because we think consideration of past record is inherently relevant.

■■ But what is the meaning and scope of "past record" or "record of service"? We are unable to locate any judicial consideration of the matter. The state service act contains no definition to guide us by analogy. Perhaps "record of service" as used therein has primary reference to the employee's service ratings maintained by his superiors and open to his inspection. *R. S.* 11:13-1 to 3, inc. But there is no similar provision for such records in the municipal act, although some municipalities may have adopted a comparable procedure. *Cf. R. S.* 11:22-35, 36 and 37, Rule 56 (1949). We believe that, besides such ratings, if available, the terms

should be held to encompass an employee's reasonably recent history of promotions, commendations and the like on the one hand and, on the other, formally adjudicated disciplinary actions as well as instances of misconduct informally adjudicated, so to speak, by having been previously called to the attention of and admitted by the employee. We further feel that such history should be formally introduced in evidence at the hearing by the party desiring to have it considered, so that it may be fully known to the adversary as well as to the tribunal and may be met or explained in any material or relevant manner. In New York, apparently, the employee's record need not be introduced in evidence before the administrative agency, but may be noted *aliunde*, and he is not entitled to be heard on the matter of punishment. *Phinn v. Kross*, 26 *Misc.* 2d 889, 205 *N. Y. S.* 2d 692 (*Sup. Ct.* 1960), affirmed 15 *A. D.* 2d 641, 223 *N. Y. S.* 2d 855 (*App. Div.* 1962). We are of the opinion, however, that a full presentation at the hearing is more conducive to fairness to both sides. We should also add that the Appellate Division was in error in saying unqualifiedly that the punishment must bear a reasonable relation to the offense presently charged despite an admissible past record.

█ In the case at bar, applying the principles we have just laid down, we think none of Bock's "past record" should be considered. There was no adjudicated disciplinary action more recent than one occurring approximately 7 years before the hearing. There was no proof that the log entries of prior tardiness had been admitted by him. And, there was no competent evidence of any recent warnings. So the case must stand, with respect to penalty, only on Bock's guilt of the three instances specifically charged. As we have said, this is the way the Commission looked at it and the Appellate Division erred in considering it otherwise.

### B.

█ We turn next to the issue of the correctness of the Appellate Division's ruling that a punishment of suspension

may not exceed 6 months. This view is derived from *R. S.* 11:15–6 of the state service act, which deals generally with the decision of the Commission on a *de novo* appeal. The second paragraph reads:

"The decision shall state whether the removal of the employee is approved, or whether he is to be restored to his position without loss of pay, transferred to another position in the same class, fined, demoted, *suspended without pay or with reduced pay, for a period not exceeding six months*, or to be reprimanded or otherwise dealt with." (Emphasis added.)

This provision immediately precedes the paragraph granting power to modify or substitute another penalty for that imposed by the appointing authority, discussed in IA, *supra*. Since the power to modify or substitute must be read with the provisions of the paragraph quoted above specifying and limiting the penalties which the Commission may impose in any event, we take it there can be no question that the provisions of the second paragraph are incorporated into municipal service procedure by *N. J. S. A.* 11:2A–1. See footnote 4, *supra*. The 6-month limitation has not been judicially passed upon by the courts of this state and similar provisions in the laws of some other states appear to have had little judicial consideration.

We agree with the Appellate Division that the pertinent language can be given no other construction but its plain meaning that if suspension is the form of penalty determined as appropriate, the duration thereof cannot extend beyond 6 months. We further agree that the limitation is mandatory rather than directory, since it involves substantive rights of the employee and not merely procedural details.

We cannot accept the argument of the Commission that the provision should be construed to permit suspension until the date its decision on appeal is finally rendered, upon the theory that it is paramount that an employer should not be compelled, in a suspension case, to pay wages for a period during which no services were rendered. Compare an earlier

case where a 3-month suspension imposed by the Commission had expired a month before its decision. *Dutcher v. Department of Civil Service, supra,* 7 *N. J. Super.,* at *page* 159. The suggestion is that such an interpretation is based upon legislative intent derived from the fact that at the time the provision was enacted, all appeals were decided within 6 months of the local action, whereas greater volume during the past few years now physically precludes a decision within that time in many cases. We can divine no semblance of any such thought in the contemplation of the Legislature in 1930. And it is certainly not the affected employee's fault· that the Commission's present volume of business frequently makes more prompt determination of appeals impossible. A remedy for what is believed to be the unfortunate consequences of Commission calendar congestion in this respect must be sought by some other means than by clear disregard of the statute. We are also unable to find any basis whatever to sustain the town's suggested interpretation that the limitation merely proscribes the Commission from increasing a suspension penalty of less than 6 months imposed at the local level to one longer than that period of time. It follows of course from the view we have expressed that the statutory limitation on the Commission's power necessarily limits the appointing authority in meting out suspension as a punishment to the same extent.

There is in our mind a sound reason for the limitation. To us it represents a legislative policy decision that if an employee's offense, coupled with his admissible past record, is serious enough to dictate a suspension from duty for more than 6 months, it merits dismissal instead. Long periods of suspension require other regular or temporary employees to perform the duties of the suspended man while his position must be kept open for his return. Such a situation is obviously not in the public interest. We find support for this rationale in the opinion of the Appellate Court of Illinois in *Nolting v. Civil Service Commission of City of Chicago,* 7 *Ill. App.* 2d 147, 129 *N. E.* 2d 236 (1955). The

statutory scheme of that state permitted a department head to discipline an employee without charges or hearing by imposing suspension for a reasonable period not exceeding 30 days. The only other penalty possible was discharge, which required the filing of charges and a hearing before the Commission. The court found that the 30-day limitation was mandatory and said: "If the offense deserves a penalty greater than suspension for thirty days, the penalty of discharge must be imposed." (129 *N. E. 2d,* at *page* 240).

We appreciate that New York appears to have taken a contrary view. Its civil service law, in listing available penalties, specifies among them suspension without pay for a period not exceeding 2 months. In *Mitthauer v. Patterson,* 8 *N. Y. 2d* 37, 201 *N. Y. S. 2d* 321, 167 *N. E. 2d* 731 (1960), a public employee had been dismissed by the administrative agency. The Appellate Division reduced the penalty to suspension for 6 months. The Court of Appeals, with very little discussion of the problem, held the reduced penalty was not illegal despite the statutory limitation. A vigorous dissent took the view, in effect, that the statute could only mean what it clearly said and that the majority was unwarranted in disregarding the legislative mandate. We find the dissenting opinion more persuasive.

## III.

We finally reach the matter of the proper disposition of this case in the light of all that has gone before. Without repeating the details previously spelled out, it is clear that the Commission and the Appellate Division each looked at the case differently and considered it erroneously in one or more different aspects. The question is whether we should exercise our power and determine this matter finally by fixing the appropriate penalty ourselves, on the approach and under the evidence which we have outlined as proper for consideration, or whether we should remand it to the Commission for similar redetermination.

In other circumstances the latter method might well be the normal course to adopt, but a long time has already elapsed, with detriment to both Bock and the town. Also, one of the two sitting Commissioners who heard the evidence is no longer a member of the body, thereby making necessary a complete new hearing before another panel. The only matter to be determined is the proper penalty on the basis of the undisputed testimony already given, as we have limited it, for 3 instances of admitted tardiness within a maximum period of 4 weeks. We think all factors dictate that we should resolve it here and now and we will do so.

■■■ As we have said, tardiness by a municipal fireman serving a duty shift, without any mitigating factors, is a serious offense. Under the circumstances we need not decide as an entirely original proposition what would be appropriate discipline. The Appellate Division found 6 months suspension to be a proper penalty, albeit on an erroneous basis. We are satisfied that the town has not shown this to be insufficient upon a consideration of the permissible elements herein previously outlined. In addition, Bock has not appealed from the Appellate Division conclusion. Consequently we will adopt it as our own.

The judgment of the Appellate Division is affirmed. No costs to any party.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.