**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1605-16T4

JUAN VILLALOBOS,

       Appellant,

v.

NEW JERSEY STATE PAROLE BOARD,

       Respondent.

_____

Argued May 30, 2018 — Decided June 12, 2018

Before Judges Fisher, Moynihan and Natali.

On appeal from the Civil Service Commission,
CSC Docket No. 2015-3042.

Sanford R. Oxfeld argued the cause for
appellant (Oxfeld Cohen, PC, attorneys;
Sanford R. Oxfeld, of counsel; John Branigan,
on the brief).

Gregory R. Bueno, Deputy Attorney General,
argued the cause for respondent New Jersey
State Parole Board (Gurbir S. Grewal, Attorney
General, attorney; Melissa Dutton Schaffer,
Assistant Attorney General, of counsel;
Gregory R. Bueno and Suzanne Davies, Deputy
Attorney General, on the brief).

Gurbir S. Grewal, Attorney General, attorney

for respondent New Jersey Civil Service Commission (Debra A. Allen, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Juan Villalobos appeals from a final determination of the Civil Service Commission (Commission) terminating his position as a senior parole officer with the New Jersey State Parole Board (Board) for misappropriating union funds. The Commission adopted the decision of the Administrative Law Judge (ALJ). We affirm.

Because ALJ Thomas R. Betancourt comprehensively detailed the relevant factual and procedural history in his written opinion, we briefly recount those facts necessary to provide context for our decision.

Villalobos was a parole officer with the Board from 1994 to 2013. During that period, he also held numerous executive positions with his union, Police Benevolent Association (PBA) Local 326, including recording secretary, vice-president, president and state delegate. On December 9, 2013, the Bergen County Prosecutor charged Villalobos with theft by deception for improperly withdrawing $5270 in union funds to pay personal legal expenses related to his divorce and current family members' immigration issues.

The next day, the Board issued an initial Preliminary Notice of Disciplinary Action (PNDA) and suspended Villalobos with pay

A-1605-16T4

pending a <u>Loudermill</u>[1] hearing for conduct unbecoming a public employee in violation of N.J.A.C. 4A:2-2.3. The PNDA identified the specific criminal and administrative charges and notified Villalobos that he was in "jeopardy of removal" because of his "indictment"[2] by the Bergen County Prosecutor.

Less than a week later, Villalobos participated in a <u>Loudermill</u> hearing. The hearing officer issued a written decision the same day. Like the PNDA, the decision detailed the charges and informed Villalobos that he was at risk of being removed from his employment with the Board. He also concluded that there was sufficient evidence to suspend Villalobos with pay pending a formal disciplinary hearing. Villalobos was served with a copy of the hearing officer's decision.

Villalobos was accepted into the Bergen County Pretrial Intervention (PTI) Program and ordered to repay the misappropriated funds. He was granted an early release of PTI and his record was expunged.

The Board issued a second PNDA on September 2, 2014. Villalobos was again notified that he was charged with conduct

---

[1] <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985).

[2] As criminal proceedings were initiated by summons and complaint, the PNDA's reference to an indictment was in error.

unbecoming a public employee and that he could lose his job because of the charges that led to his arrest.

Next, the Board held a formal disciplinary hearing. The hearing officer concluded Villalobos' conduct was unbecoming of a public employee in violation of N.J.A.C. 4A:2-2.3(a)(6), (11), and recommended Villalobos be terminated from his position as a parole officer. The Board issued a Final Notice of Disciplinary Action (FNDA) affirming the conduct unbecoming charge and Villalobos' firing. Villalobos appealed his termination and the matter was transferred to the Office of Administrative Law (OAL) as a contested case.

The ALJ presided over a five-day hearing. He considered testimony from twelve witnesses and examined documentary evidence introduced by the parties including five unauthorized checks that formed the basis of the charges.

The ALJ determined that four of the checks — nos. 2016, 2017, 2560 and 2937 — were issued from 2008 to 2010 to Anayancy R. Hausman, Esq., an immigration attorney working with Villalobos' current wife's family. The last check at issue — no. 2612 — was issued on January 6, 2010, in the amount of $3000 and made payable to Charles C. Abut, Esq., Villalobos' divorce mediator.

Before the ALJ, Villalobos defended his conduct not by claiming the disputed funds were appropriately related to union

business — he conceded the money was used for personal legal expenses — rather, he maintained the checks were authorized and issued consistent with then existing PBA Local 326 practices and procedures. Two witnesses played a critical role at trial on this central point: Villalobos and Kenneth Metallides, a senior parole officer and former PBA Local 326 treasurer.

Metallides testified that PBA Local 326 maintained general, political action committee, and annuity accounts. He stated that the union's regular and ordinary practice required checks exceeding $500 issued from the union's accounts to be presented to the executive board for approval and signed by the treasurer and either the president or the state delegate. Metallides stated that it was his practice as treasurer to leave behind both signed and unsigned blank checks when he went on vacation. In December 2009, he left signed, blank checks with Villalobos, but expected that they would be used for "[u]nion expenses or [u]nion expenditures" and only in an emergency.

Metallides testified that upon returning from vacation in January, he noticed that Villalobos had issued multiple checks in his absence, including check no. 2612, a pre-signed check that Villalobos co-signed. According to Metallides, check no. 2612 was disbursed contrary to union policies as it was issued without his or the board's approval.

Metallides testified that he emailed Villalobos concerning check no. 2612 and other checks written from the general account and asked for documentation supporting the expenditures. He also verbally asked Villalobos for clarification as to the purpose of check no. 2612. Villalobos responded that check no. 2612 related to an arbitration. Metallides understood Villalobos' explanation to mean that the check was a union expenditure for an arbitrator, a common practice.

Villalobos testified that the checks at issue were approved in a manner consistent with PBA Local 326's practices and that check no. 2612 was a loan. He confirmed that if a member requests funds from the union's accounts, the item was placed on the meeting agenda for discussion and vote. If approved, a check was issued and the transaction noted in the meeting minutes. He also maintained that the minutes would confirm the board authorized the expenditures reflected in the checks.[3]

Villalobos disputed Metallides' testimony that he regularly left blank, signed checks behind when he went on vacation. He stated that Metallides knowingly signed the disputed checks and maintained check no. 2612 was presented to the executive board for

---

[3] Neither party offered into evidence any of the board minutes.

approval. Villalobos denied having received the email from Metallides inquiring into checks written from the general account.

In his written decision, the ALJ determined that the Board met its burden of proof by a preponderance of the competent and credible evidence. He characterized Metallides' testimony as "compelling" and found him to be an "extremely credible" witness. The ALJ specifically deemed his testimony regarding leaving signed blank checks in his office while on vacation "very credible."

Conversely, the ALJ did not believe Villalobos. He characterized his testimony as "disingenuous" and observed that he did not respond directly to questions but rather "seemed to spin [his] answers." The ALJ based his adverse credibility findings in part on Villalobos' "not believable" testimony that he failed to receive Metallides' email regarding check no. 2612. He further concluded that Villalobos' testimony that the $3000 check was brought to the attention of the board "defie[d] credulity" as Metallides was on vacation at the time the check was issued and no executive meeting was scheduled.

The ALJ considered Villalobos' conduct in the context of his status as a law enforcement officer which required Villalobos to be held "to a higher standard." In affirming the decision of the hearing officer, the ALJ substantiated the charge of conduct unbecoming a public official warranting termination:

> It is abundantly clear from the record that [Villalobos] used [PBA Local] 326's account to pay personal legal expenses related to his divorce and for the family of his future wife. [Villalobos] was appropriately charged with theft by deception in violation of N.J.S.A. 2C:20-4. Notwithstanding that [Villalobos] entered into PTI, received early termination of PTI and had the record expunged, the underlying fact that [he] misused union funds is more than sufficient to sustain a finding of conduct unbecoming a public employee. It is also a sustained charge[] that warrants a penalty of removal.

On November 15, 2016, the Commission adopted the ALJ's findings of fact and conclusions of law.

On appeal, Villalobos contends the decision of the Commission was not supported by a preponderance of the competent and credible evidence and that he was not sufficiently put on notice of the charges against him. We disagree.

Appellate review of an administrative agency decision is limited. In re Herrmann, 192 N.J. 19, 27 (2007). A strong presumption of reasonableness attaches to the Commission's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001). Appellant has the burden to demonstrate grounds for reversal. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002).

Appellate courts generally defer to final agency actions, only "reversing those actions if they are 'arbitrary, capricious

or unreasonable or [if the action] is not supported by substantial credible evidence in the record as a whole.'" N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 384-85 (2008) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980) (alteration in original)). Under the arbitrary, capricious, and unreasonable standard, our scope of review is guided by three major inquiries: (1) whether the agency's decision conforms with the relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion. In re Stallworth, 208 N.J. 182, 194 (2011).

When an agency decision satisfies such criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, acknowledging the agency's "expertise and superior knowledge of a particular field." Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We will not substitute our judgment for the agency's even though we might have reached a different conclusion. Stallworth, 208 N.J. at 194; see also In re Taylor, 158 N.J. 644, 656 (1999).

Our deference to agency decisions "applies to the review of disciplinary sanctions as well." Herrmann, 192 N.J. at 28. "In

light of the deference owed to such determinations, when reviewing administrative sanctions, 'the test . . . is whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness.'" Id. at 28-29 (quoting In re Polk, 90 N.J. 550, 578 (1982)).

After thoroughly reviewing the record in light of the legal principles and the standard of review, we are satisfied that the Commission's decision was not arbitrary, capricious or unreasonable and was supported by substantial credible evidence in the record. According deference to the ALJ's credibility determinations, there is substantial evidence in the record to support the ALJ's factual findings and legal conclusions, which the Commission adopted. Further, we conclude the penalty of termination of a public officer who misappropriates union funds for personal use was not so wide of the mark to justify our substitution of the Commission's judgment. See In re Carter, 191 N.J. 474, 485 (2007) (recognizing that appellate courts have upheld the removal of public officials "where the acts charged, with or without any prior discipline, have warranted the imposition of that sanction").

With respect to Villalobos' claim that he received inadequate notice of the charges, the ALJ correctly concluded that the initial PNDA adequately informed Villalobos of the charges and the Board's

incorrect characterization of the summons and complaint as an "indictment" did not render the notice deficient. Specifically, the PNDA outlined Villalobos' criminal and administrative charges and notified him that he was in jeopardy of being fired. Further, the ALJ astutely noted that Villalobos received a second PNDA and participated in a <u>Loudermill</u> hearing. Both the second PNDA and the decision stemming from the <u>Loudermill</u> hearing indicated that Villalobos could be dismissed as a parole officer as a result of his alleged criminal behavior. The notice here was significantly more detailed than that provided to the public employee in <u>Town of West New York v. Bock</u>, 38 N.J. 500 (1962). In that case, the PNDA did not advise the employee of the penalty of removal and the Commission considered actions outside the scope of the charges listed in the PNDA.

In light of the information contained in the multiple PNDAs and presented at the <u>Loudermill</u> hearing, the ALJ appropriately determined that Villalobos was provided with sufficient notice of the charges to prepare a defense and was given all the process he was due. <u>See</u> <u>Bock</u>, 38 N.J. at 520-21.

To the extent not addressed, Villalobos' remaining arguments lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1605-16T4