**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3069-16T3

IN THE MATTER OF BETTY
GENE JOHNSON-TAYLOR.

_____

Submitted December 12, 2018 – Decided February 26, 2019

Before Judges Alvarez and Nugent.

On appeal from the New Jersey Civil Service Commission, Docket No. 2015-2424.

Betty Gene Johnson-Taylor, appellant pro se.

Law Office of Steven S. Glickman, attorneys for respondent City of Paterson (Steven S. Glickman, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Betty Gene Johnson-Taylor appeals the Civil Service Commission February 8, 2017 final decision terminating her from employment with the City of Paterson. We affirm.

A January 16, 2015 final notice of disciplinary action (FNDA) removed Johnson-Taylor from her position as an assistant personnel director for the City effective January 16, 2015. The grounds were violations of N.J.A.C. 4A:2-2.3(a)(6) and (12), conduct unbecoming a public employee and other sufficient cause.

Johnson-Taylor misrepresented her income on an application for the Home Paterson Pride Rehabilitation Program (HOME). At the time she filed, she was earning $52,811 annually and resided with her nephew. The HOME booklet listed the income maximum for a household of two at $53,750.

On July 13, 2010, Johnson-Taylor's income increased to $80,340 annually because she was appointed acting director of personnel. In that capacity, her duties included, as the Commission found, "the handling of personnel and employee relations problems and [functioning] as a liaison between the appointing authority and the Commission in personnel matters, including appointments, promotions, transfers, demotions, dismissals and disciplinary matters." As the Commission also found, her falsification of the loan documents made it impossible for the appointing authority "to continue to trust her ability to do her job, which involves sensitive and confidential personnel matters."

 A-3069-16T3

Johnson-Taylor signed an affidavit on December 1, 2010, falsely verifying her income at $53,868.12. HOME loan proceeds were disbursed a few days later. She was required to verify her income every six months while the loan was pending. At no time did she disclose her promotion and the salary increase.

Additional circumstances bear at least brief mention. They did not result in formal disciplinary action, only Johnson-Taylor's transfer back or demotion to assistant personnel director from acting personnel director. In 2011, after investigation, the City determined that Johnson-Taylor had authorized overtime payments to City employees without proper documentation. She herself received such payments, totaling $11,549.12 from July 1, 2010 to June 30, 2011, and $3326.29 from July 1, 2011 to December 15, 2011.

The Commission adopted the factual findings of the Administrative Law Judge (ALJ), but did not adopt the ALJ's recommendation that the removal be modified to a six-month suspension. The Commission instead upheld the FNDA sanction of termination from City employment.

The Commission did not consider progressive discipline, as defined beginning with West New York v. Bock, 38 N.J. 500 (1962), to be appropriate given the nature of Johnson-Taylor's conduct. Johnson-Taylor signed loan

documents with full knowledge of the contents, falsifying an application for loan proceeds. The HOME program was administered by her employer and was intended to assist those with limited income. Therefore the Commission concluded the penalty of removal was "appropriate notwithstanding a largely unblemished prior record."

The Commission also noted that although the appointing authority itself bore some responsibility since it drafted the loan documents, clearly Johnson-Taylor "knew her income exceeded the threshold for the grant." That she was not criminally charged because of the incident, and that the conduct did not relate directly to her job description was irrelevant. Her role with the appointing authority made it impossible for her to continue. Furthermore, she could not properly act as the liaison between Paterson and the Commission in personnel matters.

Now on appeal, Johnson-Taylor asserts the following points of error:

> 1. THE FINAL ACTION OF THE CIVIL SERVICE COMMISSION WAS "ARBITRARY, CAPRICIOUS OR UNREASONABLE" BASED UPON THE FACTS SET FORTH IN THE RECORD.
>
> 2. THE FINAL DECISION OF THE CIVIL SERVICE COMMISSION IS "SHOCKING" TO ONE'S SENSE OF FAIRNESS AS THE PUNISHMENT IS DIS[PROPORTIONATE] TO THE OFFENSE.

We consider Johnson-Taylor's arguments to be so lacking in merit as to not warrant much discussion in a written opinion. R. 2:11-3(e)(1)(E).

In order for us to disturb an agency's final action, it must be found to have been arbitrary, capricious or unreasonable or lack fair support in the record as a whole. Karins v. City of Atlantic City, 152 N.J. 532, 540 (1998). A strong presumption of reasonableness attaches to final agency decisions. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001).

In essence, Johnson-Taylor's challenge to the Commission's action is not that the falsification of the loan application did not occur—rather, it is that the appointing authority was implicated in the process, and that principles of progressive discipline should be applied. The Commission's findings are supported by the record, however. See In re Galloway Twp. & Bridgeton, 418 N.J. Super. 94, 103 (App. Div. 2011). The agency's observations regarding the sensitivity of Johnson-Taylor's position with the appointing authority, including interaction with the Commission itself in employee matters, are entitled to great deference. An employee in that position cannot continue after the misrepresentation of income involved in the falsification of documents. We are satisfied that the Commission's findings are not clearly mistaken, nor are they

A-3069-16T3

so "plainly unwarranted that the interests of justice demand intervention and correction." Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 587-88 (2001).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3069-16T3