93 N.J. Super. 317 (1967)
225 A.2d 723
CITY OF NEWARK, APPELLANT,
v.
HARRY M. MASSEY, AND N.J. CIVIL SERVICE COMMISSION, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 21, 1966.
Decided January 12, 1967.
*318 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. William H. Walls, Assistant Corporation Counsel, argued the cause for appellant (Mr. Norman N. Schiff, Corporation Counsel of the City of Newark, attorney).
Mr. Louis M. Minotti argued the cause for respondent (Messrs. Friedman & D'Alessandro, attorneys).
Mr. Morton Anekstein, Deputy Attorney General, argued the cause for the Civil Service Commission (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by LEWIS, J.A.D.
The City of Newark appeals from a final order of the Civil Service Commission which reduced, from removal to suspension for six months, the penalty imposed upon Harry Massey by the Newark police director, and ordered that he was "entitled to back pay unless the appointing *319 authority can present valid basis for a setoff against this claim."
Prior to the incidents that gave rise to this proceeding, Massey served as a patrolman in the Newark Police Department from March 26, 1963. He was dismissed from his employment on March 9, 1965, after a departmental hearing at which he was represented by counsel. The several charges made at that time alleged that Patrolman Massey:

CASE NO. 1
"* * * prior to his appointment to the Newark Police Department * * * did co-sign a note the balance being $460.21. During past twelve (12) months has failed and neglected to meet his obligation to liquidate this debt."

CASE NO. 2
(a) "* * * while on duty November 1, 1964, at or about 11:00 P.M. on the southwest corner of Broad and Market Streets, the location of a police call box, upon being questioned by Sergeant Bernard O'Leary, his Superior Officer, relative to his absence from post, did respond by willfully and contemptuously slamming the door of said call box."
(b) "* * * on November 1, 1964, while assigned to the intersection of Broad Street and Market Street, from 4:00 P.M. to 12:00 M., did, without just cause or proper authority, absent himself from said assigned fixed post from about 10:50 P.M. to about 11:00 P.M., a period of approximately ten minutes."
(c) "* * * on November 1, 1964 while assigned to the intersection of Broad Street and Market Street from 4:00 P.M. to 12:00 M., at about 11:00 P.M., having received a lawful order from Sergeant Bernard O'Leary his Superior Officer, to submit a report at the completion of his assigned tour of duty, relative to his alleged absence from said assigned post, did willfully fail and neglect to comply with such order."
(d) "* * * on November 2, 1964, at or about 12:05 A.M., in the First Precinct station did behave with disrespect toward Lieutenant John B. Dunsmuir, desk officer, in that he did disrespectfully toss two blank report sheets on the business desk, behind which Lieutenant Dunsmuir was present, and contemptuously stated to him, `Tell Sergeant O'Leary, I was on post and I'm not going to submit any reports,' or words to that effect, and further stated, disrespectfully and contemptuously, `I quit, shove the job up your * * *, I've been writing since I came here,' or words to that effect."
(e) "* * * on November 2, 1964 in the First Precinct station, at or about 12:10 A.M., did willfully and wrongfully toss a firearm, to wit: his fully loaded police service revolver, on the counter of the business desk, under circumstances such as to endanger human life."
*320 (f) "* * * on November 2, 1964, in the First Precinct station, at or about 12:10 A.M., did, contrary to good order and discipline, willfully and disrespectfully, toss his service revolver on the business desk, behind which Lieutenant John B. Dunsmuir, his Superior Officer, was present and on duty."

CASE NO. 3
"* * * on January 28, 1965 did, without just cause or proper authority, fail and neglect to attend, as required of him, Human Relations Class No. 16, held at the Police Academy between the hours of 1:00 P.M. and 4:30 P.M. on said date."
Massey was found guilty of all charges and received a total penalty of 16 months' suspension from duty, which was allocated: Case No. 2, (a) three months, (b) one month, (c) two months, (d) six months, (e) three months, (f) one month; Cases Nos. 1 and 3, no penalty.
Because the penalties totaled 16 months' suspension, the police director determined that the accused patrolman should be discharged from the force. In doing so he followed Town of West New York v. Bock, 38 N.J. 500, 526 (1962), in which a six-month limitation on suspension, R.S. 11:15-6, was held to be a policy mandate of the Legislature.
On appeal to the Civil Service Commission, Massey was again found guilty of all charges, but the penalty was reduced to a suspension for six months. The matter was reviewed by the Commision on a stipulated record which included, primarily, a transcript of the testimony of witnesses at the hearing conducted by the police director. While purely formal proof may always be stipulated or presented to the Commission on an agreed record, if the weight of testimony must be evaluated, credibility decided, and impressions as to candor and forthrightness received, the agency "should have the advantage of seeing and hearing the witnesses." Moorestown Tp. v. Armstrong, 89 N.J. Super. 560, 565 (App. Div. 1965), certification denied 47 N.J. 80 (1966). See also Town of West New York v. Bock, supra, 38 N.J., at p. 507, n. 1; R.S. 11:22-39. Here, we have a statement by the attorney for Massey before the Commission that "we do not quarrel with the findings of guilt by the Director * * *. It *321 is our contention that the penalty was harsh and too severe." In essence, the appeal to the Commission was a plea for clemency and reinstatement based on the record of the departmental proceedings.
The Commission plainly considered the several offenses which occurred on November 1 and 2, 1964 as contemporaneous acts of misconduct constituting a single malefaction. Its decision concluded with the statement that, "Technically, they might be deemed separate and distinct. In fact, they were not." We disagree.
There was an adequate lapse of time, between the episode of insubordination and contemptuous attitude toward Sergeant O'Leary and the subsequent acts of disrespect and misconduct manifested before Lieutenant Dunsmuir, for Massey to have "cooled off" and reflected upon the seriousness of his behavior.
The sergeant testified that Massey was absent from his assigned post at Broad and Market Streets on the night of November 1, 1964 for approximately 25 minutes and refused to give any reason for such absence; he also refused, at the close of his tour of duty, to submit a report with respect thereto, as requested by the sergeant. The reasons advanced at the municipal hearing were not convincing. The director stated, "I don't believe what he [Massey] said." When his counsel characterized the charges against his client as "rather trivial," the director explained the necessity for constant police protection against street crimes at that location, stating:
"The minute we put a policeman there in uniform that was deterrent enough to stop ninety-nine percent of them. * * * Now, as to him being tired and that he has to contend with people, this is the job of a policeman and discipline is a primary and basic consideration that a policeman must have. We are a semi-military organization, and without discipline and without respect for your superior, whether you like him or not, we cannot have a police department, and I must have one."
The conduct of Massey in leaving his post, like that of the suspended policeman in City of Asbury Park v. Department *322 of Civil Service, 17 N.J. 419 (1955), indicated "an attitude of mind and approach to the obligation of his office fundamentally at variance with his sworn duty." At pp. 429-430. In that case, Civil Service reversed the decision of the city manager, but our Supreme Court overruled the Commission and reinstated a six months' suspension without pay. In Eisberg v. Borough of Cliffside Park, 98 N.J.L. 260 (E. & A. 1922), an officer was dismissed from the local police force for failure to "ring in to headquarters from certain specified police boxes * * *." The penalty was sustained by our former Supreme Court and, on appeal, abandoned by default, a judgment of affirmance was entered.
Massey's original offense was compounded by his subsequent defiance of the orders properly issued by his sergeant and later by his lieutenant to make out a report immediately as to his "whereabouts." Generally, insubordination warrants a dismissal. See 4 McQuillin, Municipal Corporations (3d ed. 1949), § 12.240, p. 272. State v. Naglee, 44 N.J. 209, 221 (1965), jurisdiction postponed, appeal on the merits pending sub nom. Garrity v. New Jersey, 383 U.S. 941, 86 S.Ct. 1194, 16 L.Ed.2d 205 (1966) (case argued November 10, 1966, 385 U.S. ___, ___, 87 S.Ct. 616, 17 L.Ed.2d ___, ___), involved an officer who failed to cooperate in an investigation of his official conduct, and it was held that his actions were inconsistent with his police duties and that he was properly subjected to dismissal. The obligation to cooperate "is intrinsic to the position of a police officer." Ibid.
A patrolman was charged, inter alia, in a New York case, with a refusal to obey the order of his superior officers to return to his post. The court concluded that such behavior, standing alone, constituted insubordination which "not only justified but required his dismissal from the force." Krause v. Valentine, 268 App. Div. 788, 48 N.Y.S.2d 901, 902 (App. Div. 1944). See also McCain v. Sheridan, 160 Cal. App.2d 174, 324 P.2d 923 (D. Ct. App. 1958), where appellant, who refused to comply with an order of the police chief to complete a polygraph test, was found guilty of insubordination, *323 disobedience and conduct unbecoming a police officer. The court there said, "Refusal to carry out a valid order concededly would be ground for dismissal," and then made the observation, "The efficiency of our system of administration of justice depends, in large part, upon police officers' faithful discharge of the trust reposed in them. * * * Whatever weakens that trust tends to destroy our system of law enforcement." Id., 160 Cal. App.2d, at pp. 176, 177, 324 P.2d, at pp. 925, 926. Accord, In re Emmons, 63 N.J. Super. 136, 140 (App. Div. 1960).
The disrespect that Massey manifested toward his superiors was subversive of discipline and was conduct unbecoming a police officer. Note Alcutt v. Board of Police Commissioners, 66 N.J.L. 173 (Sup. Ct. 1901), affirmed o.b. 67 N.J.L. 351 (E. & A. 1902). As the director pointed out, a police force and its responsible officers in many respects constitute a military-type organization and discipline must be enforced. See 16 McQuillin, Municipal Corporations (3d ed., revised 1963), § 45.16, p. 675, and Gourley, "Police Discipline," 41 J. Crim. L., C. & P.S. 85, 86 (1950).
Additionally, Massey was charged with the offense of tossing a loaded service revolver on his lieutenant's desk, an incident plainly detached from his earlier demonstration of resentment toward his sergeant. The Commission dismissed that charge with the comment that "the record shows clearly that the revolver could not have gone off because it contained a safety lock which was functioning properly." However, on cross-examination, Lieutenant Dunsmuir testified:
"Q. In other words, you can pull this hammer back as far as it will go without catching and let it go, like that, and there would be no firing of the revolver.
A. Let me see how you did that again.
Q. Pull the hammer back as far as it will go without catching  I mean, not this way. A. I wouldn't want to try it the way you are doing it. It could possibly go off.
Q. This is loose here and I think it's made for that purpose, right? A. Yes. If you drop it now, I believe that gun will discharge.
*324 Q. Shall we try it? All right. A. I'd also like to add that there is certain procedures in the handling of firearms that all officers should follow; safety procedures, and he [Massey] did not handle his firearm using those safety procedures."
The careless handling of a loaded revolver by any person in the presence of another is inexcusable; a fortiori by a law enforcement officer who should have the temperament and training always to respect its potentiality for danger, even if the safety mechanism be properly positioned. In City of Newark v. Civil Service Commission, 115 N.J.L. 26 (Sup. Ct. 1935), an off-duty patrolman, while engaging in "good natured raillery," thought he had ejected all the bullets from his service pistol, but there was one remaining which discharged, mortally wounding a friend. The Civil Service Commission sustained a charge of misconduct against the officer but reduced the penalty of removal imposed by the director to a suspension without pay. On appeal the court held: "The drastic action taken by the director of public safety was fully warranted by the facts." At p. 32.
The necessity for utmost competency and strict adherence to safety procedures by police officers, with respect to firearms, is emphasized by the decisions imposing civil liability upon municipalities for the negligence of their employees. See Peer v. City of Newark, 71 N.J. Super. 12 (App. Div. 1961), certification denied 36 N.J. 300 (1962), a tort action predicated upon alleged inadequate training of a policeman, which resulted in a judgment for substantial damages against the city. Those in charge of maintaining a competent police force in a municipality exposed to such liability must be continuously vigilant in the fulfillment of their supervisory obligations.
In disciplinary actions, when an officer has been adjudged guilty of misconduct, the penalty, determined by the department head "upon whom, in the final analysis, rests the responsibility of sedulously maintaining departmental morale and discipline and adequate standards of service," should not be disturbed unless the discipline visited upon the convicted *325 offender is so "utterly disproportionate to the offense" as to amount to a clear abuse of discretion. City of Newark v. Civil Service Commission, supra, 115 N.J.L., at pp. 30, 31. The director of a police force has a duty to "rid his department of irresponsible members." Id., at p. 32. And see Moorestown Tp. v. Armstrong, supra, where a patrolman was removed from office by the township, the penalty was reduced by Civil Service to six months' suspension without pay, and this court reversed the Commission reinstating the order of dismissal.
The Commission should bear in mind, as stated in Borough of Park Ridge v. Salimone, 21 N.J. 28, 44 (1956), that the primary object and purpose of the civil service law is to secure for government, at its various levels and in all its many functions, efficient public service  "The welfare of the people as a whole, and not specifically or exclusively the welfare of the civil servant, is the basic policy underlying the law." The provisions of such laws, as they relate to discharge or removal, "are designed to prevent the disturbance of the system, not to benefit individuals in the service except as it may assure them of a recognition of faithful and capable conduct." 4 McQuillin, op. cit., § 12.247, p. 286. Note Maxwell v. Board of Com'rs of City of Wildwood, 111 N.J.L. 181, 186 (Sup. Ct. 1933), affirmed o.b. 113 N.J.L. 404 (E. & A. 1934). Cf. City of Plainfield v. Simpson, 50 N.J. Super. 250, 259-260 (App. Div. 1958).
We are convinced that the original penalty of removal imposed upon Massey was not excessive but, to the contrary, was appropriate and justified. We perceive no valid basis to support the Commission in minimizing the seriousness of the charges and in modifying the penalty. The police director's order of dismissal should be reinstated.
So ordered.