904 A.2d 764 (2006)
387 N.J. Super. 450
In the Matter of Tammy HERRMANN.
Superior Court of New Jersey, Appellate Division.
Argued January 24, 2006.
Decided August 16, 2006.
*765 Daniel P. McNerney, Hackensack, argued the cause for appellant (McNerney & McAuliffe, attorneys; Mr. McNerney, on the brief).
Sonia M. Frontera, Deputy Attorney General, argued the cause for respondent (Nancy Kaplen, Acting Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Ms. Frontera, on the brief).
Before Judges KESTIN, HOENS and SELTZER.
The opinion of the court was delivered by
KESTIN, P.J.A.D.
Tammy Herrmann appeals from a decision of the Merit System Board (Board) affirming the action of the appointing authority, the Division of Youth and Family Services (DYFS or Division), removing her from employment as a family service specialist trainee. In reaching its decision, the Board adopted the findings of fact and conclusions contained in the initial decision of the Administrative Law Judge (ALJ) who had heard the contested case. We affirm the determination that Herrmann had engaged in conduct unbecoming a public employee, warranting discipline; but we vacate the discharge sanction imposed, and remand for reconsideration and imposition of a more suitable disciplinary measure.
On appeal, Herrmann argues that the decision upholding the charge of "conduct unbecoming a public employee," N.J.A.C. 4A:2-2.3(a)6, was arbitrary and capricious; and that it departed from accepted legal standards for "conduct unbecoming." She also asserts that the sanction of discharge violated established standards for progressive discipline of public employees.
Although the charging form recited that Herrmann served in the title of "family service specialist trainee," it seems clear from the record that she had completed her four-month working test period, see N.J.A.C. 4A:4-5.2, and was a permanent employee rather than a trainee. Except for one passing reference to Herrmann as a "provisionary employee," the ALJ referred to her without the "trainee" designation. Herrmann had commenced her employment on February 21, 2001.
The single specification of misconduct, served on October 16, 2001, was: "On August 6, 2001 while conducting an intake investigation you flicked a cigarette lighter in the face of a five year old child. There were oxygen tanks in the room at the time of the incident. Your behavior was inappropriate and dangerous." The home investigation that led to the charge had been prompted by an impression given by one foster child that another child in the foster home had been tied and beaten because he had set a fire in the basement of the home.
The ALJ heard testimony from three witnesses in support of the charge: the foster mother; Herrmann's supervisor; and a deputy attorney general assigned to represent the Division. Two witnesses testified on behalf of Herrmann: a co-worker who had accompanied her on many investigations, including the one in question, but who had not witnessed the incident with the cigarette lighter; and Herrmann herself, who admitted that the incident had occurred, but that she had not intended to ignite the lighter. Herrmann also contended that the incident had occurred in a different area of the home, *766 not in the bedroom where oxygen equipment was located.
Evaluating the testimony he had heard, the ALJ found the testimony of the witnesses in support of the charge "to be very credible and consistent[,]" and that Herrmann had acted "well beyond the scope of her mandate as an intake investigator for DYFS." He specifically found Herrmann's version of the facts and her explanation of her conduct not to be credible. He concluded that Herrmann was
not qualified to conduct investigations into [the child's] psychological problems with regard to fire setting and should not have attempted to do so. Her actions were dangerous. It could have created, I fully believe, serious psychological problems for the children and indeed might have done so and serve to put the actions of the agency in disrepute and additionally serve to seriously harm the credibility of the agency in a potential court action.
He upheld the charge that had been filed.
The ALJ went on to characterize Herrmann's conduct "during the course of the investigation" to have been "inexcusable."
In a delicate situation the testimony consistently seemed to demonstrate that [Herrmann] was overwhelming[ly] heavy handed, insensitive to the needs of the children in the family, and in fact, the lighter flicking incident speaks entirely for itself. Especially egregious was [Herrmann's] action in experimenting with the lighter in front of the primary subject of the investigation, J.M. Where she lit the lighter is immaterial although if indeed she had flicked and lit the lighter in a room full of oxygen tanks her judgment to put it mildly is severely questionable. Regardless, however, where the lighter was effectively lit, the fact that she did it at all places serious doubt in her judgment and ability to properly perform her assigned duties. The actions of such an investigator on behalf of DYFS can and does serve to seriously undermine the public trust and reliability in the actions of DYFS investigators. By jeopardizing the reputation of such investigators, it tends to hinder almost beyond repair the work of the agency and its need to protect those who cannot protect themselves. In addition, it can in this case and certainly did seriously jeopardize a court action involving the parents resulting in the need to settle such action. The settlement was successful but also due to the work of the attorneys but absolutely no thanks due to the action of this particular investigator.
There is no question that progressive discipline should be considered in determining whether or not to uphold the action of an agency in its disciplining of its employees. It must further be emphasized, however, that in this situation [Herrmann] was a provisionary employee. While there was no apparent history, the action of this [employee] I FIND to be so egregious that the only course of action left to the agency and the only course of action that is acceptable is that of termination. [Herrmann's] action with regard to the lighter I FIND was so potentially damaging to the individuals she was suppose[d] to protect, that the thought of such repeated performances could take place with regard to another client is unacceptable. I FIND the testimony of various witnesses presented by the [Division] to be totally credible; therefore, I feel I have no choice but to uphold the action taken by the agency. I FIND the action taken by the agency in removing [Herrmann] from her position effective October 24, 2001, to be justified in all respects and I *767 hereby uphold and ratify the action taken by the agency.
The Board's findings of fact, subsumed in its adoption of the initial decision, are binding on appeal because they are supported by "sufficient credible evidence in the record." In re Taylor, 158 N.J. 644, 657, 731 A.2d 35 (1999); see also Gloucester County Welfare Bd. v. Civil Serv. Comm'n, 93 N.J. 384, 390-91, 461 A.2d 575 (1983); Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980). Although we are enjoined to give substantial deference to an administrative agency's interpretation of the law it has been assigned to administer, see Matturri v. Board of Trustees, Judicial Retirement System, 173 N.J. 368, 381, 802 A.2d 496 (2002); New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575, 384 A.2d 795 (1978), we are not bound by any determination of law an agency may make, see SSI Medical Services, Inc. v. Department of Human Services, 146 N.J. 614, 620-21, 685 A.2d 1 (1996); Mayflower Securities Co. v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497 (1973), any more than we are bound by a trial court's legal decisions, see Manalapan Realty, L.P. v. Township Committee of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
Reviewing courts are also called upon to give deference to an administrative agency's choice of sanction or result stemming from the facts found. See In re License of Zahl, 186 N.J. 341, 353, 895 A.2d 437 (2006); Greenwood v. State Police Training Ctr., 127 N.J. 500, 513, 606 A.2d 336 (1992); Holmdel Bldrs. Ass'n v. Township of Holmdel, 121 N.J. 550, 574, 583 A.2d 277 (1990). Although courts must accord great respect to the policy determinations of agencies in other branches of government out of regard for separation of powers values, see Public Service Electric and Gas Co. v. Department of Environmental Protection, 101 N.J. 95, 103, 501 A.2d 125 (1985); Cosme v. Borough of East Newark Township Committee, 304 N.J.Super. 191, 206, 698 A.2d 1287 (App.Div.1997), certif. denied, 156 N.J. 381, 718 A.2d 1210 (1998), and for other reasons, where a court-declared legal standard exists, the other branches of government are obliged to respect and apply it, especially where it is long-established and has not been modified by the Legislature over the years. Cf. Malone v. Fender, 80 N.J. 129, 137, 402 A.2d 240 (1979).
Two such related rules are pertinent here. The first is that "[p]roperly stated charges are a sine qua non of a valid disciplinary proceeding. It is elementary that an employee cannot legally be tried or found guilty on charges of which he has not been given plain notice by the appointing authority." Town of West New York v. Bock, 38 N.J. 500, 522, 186 A.2d 97 (1962). The second rule, acknowledged by the Division, and long considered to be found in the interstices of Bock, id. at 514-27, 186 A.2d 97, is the principle of progressive discipline for public employees who are found to have violated fair standards of conduct.
We cannot conclude that the discharge sanction in this matter was warranted by the only charge lodged against the employee: the single instance of excessive and ill-considered conduct involving the cigarette lighter. Taking the ALJ's stated rationale on its face, it seems clear that Herrmann's discharge was premised as much upon otherunchargedinstances of unacceptable conduct as upon the one episode.
Without a charge that Herrmann engaged in any specified conduct beyond the cigarette lighter incident itself, there is no adequate basis in the misconduct charged for the sanction imposed. To the extent *768 the discharge ordered was premised upon Herrmann's conduct in general, her attitudes toward the Division's clientele, and her lack of qualifications "to conduct investigations into [the child's] psychological problems," it cannot be seen as properly applying the sine qua non charging principle of Bock.
Characterizing the "lighter flicking incident [as] speak[ing] entirely for itself[,]" the decision portrayed Herrmann as "overwhelming[ly] heavy handed, [and] insensitive to the needs of the children in the family[.]" The particular incident was described as an "[e]specially egregious" example of Herrmann's shortcomings. She was seen as seriously deficient "in her judgment and ability to properly perform her assigned duties" to the extent of "seriously undermin[ing] the public trust and reliability in the actions of DYFS investigators." Her conduct was seen as "jeopardizing the reputation of such investigators, [and] tend[ing] to hinder almost beyond repair the work of the agency and its need to protect those who cannot protect themselves." The impact of Herrmann's behavior on the Division's relationship with the particular family was emphasized.
It seems clear that this analysis was based on the testimony of Herrmann's supervisor that shethe supervisorwas concerned with Herrmann's assessment "that the children [in the family] were being abused, and . . . needed to be removed[,]" and Herrmann's propensity to reach such conclusions "on a lot of her cases." In later endeavors to resolve the incident, a court proceeding was necessary. The ALJ found the family appeared at that proceeding with an extensive "rebuttal of the agency report which included a detailed version of the lighter flicking incident." Apparently, Herrmann had not previously documented the lighter-flicking incident. The supervisor also testified that Herrmann's "conduct was unbecoming as a State employee"; that "she had poor judgment"; that "[s]he wasn't documenting things the way that she was supposed to be"; and that "she had poor decision making skills."
The deputy attorney general who testified emphasized the impact of Herrmann's general conduct and the lighter-flicking incident on the case involving the family. According to the ALJ, the deputy attorney general evaluated Herrmann's conduct as unprofessional and excessive, with a seriously adverse impact on DYFS's litigation position.
The single specification in this matter, regarding the cigarette lighter incident, was, by itself, an inadequate basis for a charge seeking the employee's dismissal. As gravely ill-considered as Herrmann's conduct may have been in that connection, the incident by itselfthe only specification for the chargewas not so evocative of personal shortcomings as to be sufficiently inconsistent with the duties of the position to warrant dismissal in the absence of any other admissible past record of employee misconduct. And, the other apparent bases for the action taken by the appointing authority and upheld by the Boardpoor attitude, lack of evaluative skills and judgment, and failure to documentwere, simply, not charged.
We have not hesitated to uphold a discharge sanction where the acts charged constituted conduct so pervasively unbecoming the duties of the position as to merit discharge, even in the absence of prior discipline. See, e.g., Cosme, supra, 304 N.J.Super. at 205-06, 698 A.2d 1287; City of Newark v. Massey, 93 N.J.Super. 317, 322-23, 225 A.2d 723 (App.Div.1967); cf. Township of Moorestown v. Armstrong, 89 N.J.Super. 560, 566, 215 A.2d 775 (App.Div.1965), certif. denied, 47 N.J. *769 80, 219 A.2d 417 (1966). We should not hesitate, either, to reverse a discharge sanction that is an excessive response to the misconduct specifically charged. As displeased as Herrmann's supervisors may have been with her general performance, the charges filed against her did not specify any misconduct apart from the single incident. We discern, in the facts of this case, as it has been constructed and presented, no adequate articulation within the four corners of the charges filed for departing from the principle of progressive discipline. See In re Polk, 90 N.J. 550, 578, 449 A.2d 7 (1982)("the test in reviewing administrative sanctions is `whether such punishment is "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness."'" (citations omitted)).
The finding that Herrmann had engaged in conduct unbecoming a public employee is affirmed. The discharge sanction is vacated and the matter is remanded for reconsideration of the disciplinary penalty and imposition of a sanction better suited to the charge that was filed and sustained.